GEORGE CULVER, *et al.*

*vs.*

WM. L. BANNING.

W, in consideration of the agreement hereinafter stated of J. C. B. and three others, agreed with them to erect a hotel on certain land in St. Paul and they in consideration of his said agreement, and of the benefits and advantages to accrue therefrom to them as owners of real estate in said city, agreed to pay W $20,000 in specified installments during the progress of the work, and on its completion to convey to him the fee simple of the said land upon which said hotel had been so built. After the execution and delivery of this agreement, the defendant subscribed three hundred dollars upon a paper setting forth that, whereas W proposed to build said hotel upon said site in consideration of a bonus of $20,000, to be paid in installments, as aforesaid, and the fee simple of the site, that, therefore, the signers thereto, in order to induce the erection of such building on said site, each for himself, agreed to give the sum subscribed by him, and pay the same as required to enable them to comply with the purchase agreement and contract thereinafter authorized, to five persons named, (of whom J. C. B. and said three others were four) to be by them received in trust, to be used in purchasing said site, and payment of said bonus to W, or such other person as would contract for such building, and jointly and severally authorizing them to purchase said site, and make such contract as they might deem necessary to insure the erection of such hotel, and with the moneys subscribed to pay for the site, and pay the said bonus, and convey the site to the person erecting such hotel. Said hotel was duly erected according to said contract. The defendant paid sixty dollars upon his said subscription, but, though duly requested, refused to pay the rest. *Held*, that there was no consideration for defendant's subscription.

After partly completing the building, W assigned his said contract to

plaintiffs, who finished the hotel for themselves.    One of the plaintiffs testified that they went on and completed it, relying on the subscriptions of defendant and others, in part, to compensate them.    *Held*, that this furnished no consideration for defendant's promise.

This action was brought in the district court for Ramsey county, and was tried before a referee, whose conclusion of law upon the facts found by him was, " that the plaintiffs have no cause of action."    A motion for a new trial was made by the plaintiffs before the court, and from its order denying such motion they appeal.

MORRIS LAMPREY, for Appellants.

I. When several persons promise to contribute to a common object, which they wish to accomplish, the promise of each is a good consideration for the promises of the others. Incurring expenses and assuming liabilities in consequence of a promise, are a sufficient consideration for a promise.  The presumption is that these persons named in the agreements, entered into the agreement with James M. Winslow, relying upon the subscriptions and promises of the defendant and other subscribers.

The subscribers and their subscriptions were the *causa causans* of the whole undertaking.  The proposal and undertaking of Winslow, the acts of the trustees, relying upon the promises of the subscribers, were ample considerations for their promises to pay their subscriptions.    *Leonard George, et al. vs. Nathan Harris*, 4 *N. H. Rep.* 533 ;  *The Cong. Soc. &c. vs. Perry*, 6 *N. H.* 164 ;  *Bryant vs. Goodnow*, 5 *Pick.* 228 ;  *Watkins vs. Eames*, 9 *Cush.* 537 ;  *Thompson vs. Page*, 1 *Met.* (*Mass.*) 568 ; *M. Auler vs. Billenger*, 20 *Johns.* 89 ;  *Fisher vs. Ellis*, 3 *Pick.* (*Mass.*) 321 ;  *Religious Soc. vs. Stone*, 7 *Johns.* 112 ;  *Trustees, &c. of Farmington Acad. vs. Allen*, 14 *Mass.* 172 ;  *Homes et al.*

*vs. Dana*, 12 *Mass.* 190 ; *Underhill vs. Gibson*, 2 *N. H.* 352 ; *Amherst Acad. vs. Cowles*, 6 *Pick.* 433 ; *Barnes vs. Perine*, 12 *N. Y.* 18 ; *Richmondville Sem. vs. Brownell*, 37 *Barb.* 535 ; *Boston vs. Simmons*, 9 *Cush.* 373 ; 44 *Barb.* 547 ; *Hopkins vs. Upshur*, 20 *Texas*, 89 ; *Doyle vs. Glasscock*, 24 *Texas*, 200 ; *Comstock vs. Howe*, 15 *Mich.* 237.

II. " One who becomes a subscriber upon a subscription paper for a fund to enable another to establish an educational or a religious institution, becomes bound by his promise therein, if the latter accepts and acts upon the promise. His liability is not limited to the actual expenditure made upon the faith of the subscription before suit brought on the theory of money paid on his request.

The subscription, though not regarded as binding as being a mutual promise, is a conditional promise to the trustees to the fund ; and when they proceed in the enterprise on the faith of it, the promise is accepted and becomes a binding contract." *Wayne & Ontario Collegiate Institute vs. Smith*, 36 *Barb.* 576 ; *Underwood vs. Waldron*, 12 *Mich.* 73 ; *Hutchins vs. Smith*, 46 *Barb.* 235 ; *Robertson vs. March*, 5 *Scam.* 98.

III. When James. M. Winslow failed to complete the hotel and perform his contract, it was not incumbent upon the trustees to abandon the undertaking, but they acted in the proper exercise of their functions, in finding other persons, and contracting with them, to erect and complete the hotel.

The legal title of these subscription-demands was in the trustees, and they could sell and dispose of the same. Such sale would not be void, but only voidable in any view of it ; and nobody could object to the same, but the *cestui que trust ;* but James M. Winslow, the *cestui que trust*, cannot be heard to object, because he has affirmed the acts of the trustees, and turned over and conveyed all his right, title, interest and

claim in the demands, and all the hotel property to the same parties—these plaintiffs.

These plaintiffs are, therefore, the owners of the legal title to these demands, and of all the equities appertaining to the same. *Wilson vs. Mason*, 1 *Cranch*, 100 ; *Story's Eq. secs.* 1039, 1040, *and cases there cited*; *Newman vs. Jackson*, 12 *Wheaton*, 570 ; *Olcott vs. Tioga R. R. Co.* 27 *N. Y.* 546 ; *Same vs. Same*, 40 *Barb.* 179 ; *Johnson vs. Bennett*, 39 *Barb.* 237 ; 5 *Ves.* 678 ; 13 *Ves.* 600 ; *Hayward vs. Ellis*, 13 *Pick.* 272 ; *Franklin et als. vs. Osgood et als.* 14 *Johns. R.* 526 ; *Davoue vs. Fanning et al.* 2 *Johns. Ch.* 251, *and* 283 *to* 311 ; *Harrington vs. Brown*, 5 *Pick.* 521.

It cannot be objected that Winslow should be made a party to the action, for if there were any such objection it is waived· *Gen. Stat., p.* 460, *sec.* 78. Winslow is estopped from objecting by his own acts, and such estoppel need not be pleaded. *Caldwell vs. Auger*, 4 *Minn.* 217.

" The person to whom the subscriptions are made payable is the person through whose instrumentality the work is to be performed, if no other person is designated in the instrument for that purpose, and having assumed the work, and caused it to be completed, he has a right to demand payment, and authority to enforce subscriptions." " He has also the right to assign his interest in the agreement to another, and the assignee may sue thereon." *Van Rensselaer vs. Aiken*, 44 *Barb.* 547.

The attorney for the defendant in this case does not pretend to appear for James M. Winslow.

" There is nothing in law or in morals that requires him to object in behalf of others." *Small vs. Ludlow*, 20 *N. Y.* 157 ; *Knox et al. vs. Jenks*, 7 *Mass.* 488 ; *Harrington vs. Brown*, 5 *Pick.* 521.

IV. A sale and conveyance, by a trustee, of the trust property, so that he becomes the purchaser himself, is not void,

but voidable only.   *Olcott vs. Tioga R. R. Co.* 27 *N. Y.* 546 ; 40 *Barb.* 179 ; *Johnson vs. Bennett,* 39 *Barb.* 237 ; 2 *Johns. Ch.* 251 ; 5 *Ves.* 678; 13 *Ib.* 600 ; *Johnson vs. Bennett,* 39 *Barb.* 237.

H. J. HORN, for Respondent, cited the following authorities : *Hamilton College vs. Stewart,* 1 *Com.* 581 ; 1 *Story on Contracts, sec.* 10, *chap.* 1, *book* 2 ( *ed.* 1864), *pages* 453, 454 *and authorities cited* ; *N. Y. and Minn. Gold M. Co. vs. Martin,* 13 *Minn.* 417.

*By the Court.*—RIPLEY, CH. J.—The plaintiffs insist that the agreement of the defendant to give the sum set opposite his name, was made upon a legal and valid consideration.   To induce Winslow to build a hotel for himself on a certain site, which appears from the subscription paper itself to have been the object of the subscription, does not appear in this case to have been a matter of public interest ; nor is it shown that the defendant had therein any pecuniary interest.   An agreement with Winslow to give him a certain sum to induce him to purchase himself a suit of clothes, would not have been more purely gratuitous, so far as the defendant was concerned, than this.   This seems to dispose of the argument that the proposal of Winslow set out in the subscription paper, was an offer, which the defendant accepted by signing, and thus completed the contract, for the contract on Winslow's part would in that case, still have been but an agreement to do something exclusively for his own benefit.   Nor is there any agreement on the part of the trustees to do, or forbear to do, anything as a consideration for the promise of the defendant.   *Trustees of Hamilton College vs. Stewart,* 1 *Coms.* 581.

The subscription paper, therefore, looked at by itself, is plainly without a consideration unless this further proposition of the plaintiff be true, viz. : that " when several persons

promise to contribute to a common object, which they wish to accomplish, the promise of each is a good consideration for the promises of the others."

This is maintained in some cases of voluntary subscriptions for public purposes, but as we agree with the court of appeals of New York, (*Barnes vs. Perine*, 12 *N. Y.* 18,) that an attempt to reconcile all the cases which have been adjudged touching the validity of voluntary engagements to pay money for such purposes would be altogether fruitless, we shall only say that, in our judgment, the weight of authority is decidedly against the position. 1 *Parsons on Contracts, book* 2, *ch.* 1, *s.* 10 *and notes and cases cited.*

The present position of the supreme court of Massachusetts on this point seems to be this :

" Opinion has fluctuated, it is true, upon the question how far, in a common subscription by several persons, to an object of public utility, the promise of each one is a consideration for that of another. It has been objected that, to assume the respective promises as consideration one for the other, is to beg the whole question, and to reason in a circle. But, if it clearly appear that a number of subscribers promise to contribute money, on the faith of the common engagement, for the accomplishment of an object of interest to all, and which cannot be accomplished save by their common performance, then it would seem that the mutual promises constitute reciprocal obligations." *Watkins v. Eames*, 9 *Cush.* 537.

Assuming, that this is applicable to the present subscription, although on its face only for the private benefit of an individual, still it nowhere appears, on the face of the papers in evidence, that the subscribers to those papers promised to give on the faith of the common engagement.

On the face of the papers each subscriber " for himself agrees to give the sum set opposite his name."

Culver et al. v. Banning.

The defendant's promise is a promise to give, connected with a similar promise by others to give to the same purpose, but these promises are not mutual among the subscribers, so as to make the promise of one, or the performance of it, a consideration for the promise of another. *Limerick Academy v. Davis,* 11 *Mass.* 113.

In the court of appeals of New York it was said in the case of *Barnes v. Perine,* 12 *N. Y.* 18, that, since the case of *Hamilton Coll. v. Stewart,* 1 *Coms.* 581, the court was not " at liberty to consider whether the ground taken by the chancellor in the same case, (2 *Denio,* 403) that the promise of one subscriber might serve as a consideration for the promise of another, was good law; for the judgment, given by this court in that case, could not have been rendered without determining that ground to be unsatisfactory." *Per Johnson, J. p.* 30.

It is the opinion of Prof. Parsons, that unless such subscriptions (for public uses) are to be held binding on grounds of public policy, it is not easy to go further than to hold them obligatory, where advances have been made, or expenses and liabilities incurred by others, in consequence of such subscriptions, before any notice of withdrawal, and this rule he thinks well established. *1 Parsons on Cont. supra.*

No question of public policy is involved in the present case. There is, therefore, no reason to be suggested why we should go counter to what we consider, as above stated, to be the weight of authority, and hold the defendant liable on the naked subscription paper. The plaintiffs, however, contend that the evidence brings the case within the rule above laid down by Parsons, viz.: that expenses were incurred, and liabilities assumed, in consequence of the defendant's promise.

The witness Culver was asked if the plaintiffs went on and completed the hotel, relying on these subscriptions, in part, to compensate them; and was allowed, against defendant's

objection, that the question was immaterial, to answer that they did.

The plaintiffs bought out Winslow, and built the hotel for themselves, and it was, therefore, as entirely immaterial in their case, as it would have been in his, whether or not they so relied on the subscriptions.

The expense they incurred in completing the hotel, was no benefit to the defendant, nor injury to the plaintiffs, and was, therefore, no consideration for the defendant's promise to give; neither is it as Winslow's assignees, but as the assignees of the trustees, that the plaintiffs claim to recover in this action. As such, however, they insist that the case shows, that the trustees incurred expenses and assumed liabilities on the faith of these subscriptions. The referee does not so find. The plaintiffs, however, argue that this appears from the following considerations: The subscribers agree to pay their subscriptions to the persons named as trustees, "to enable them to comply with the purchase agreement or contract hereinafter mentioned. The said money so subscribed to be by them received in trust to be used in purchasing said * * site, and for the payment of the bonus * * to said Winslow, or other persons who will contract for the erection of a hotel thereon;" and they authorize said trustees " to contract for or purchase said site, * * * and to make such contract as they may deem necessary to insure the erection of such a hotel thereon; and with the moneys subscribed to pay for said site, and also to pay the said bonus, and convey, or cause to be conveyed, the said site to the person so erecting said hotel."

The plaintiffs contend that the presumption is that those of said trustees who entered into the contract with Winslow, did so, relying on these subscriptions; that "the subscribers and their subscriptions were the *causa causans* of the whole

undertaking," and that the acts of the trustees, relying on said promises, were ample consideration for their promises to pay their subscriptions.

The subscription papers, indeed, are couched in language looking to something to be done. But whatever might have been the presumption under other circumstances, it is impossible to see how any such as that proposed by plaintiffs arises on the evidence.

The contract with Winslow purports to have been made on the 12th of May, 1869. It took effect from delivery, of course, but the presumption, in the absence of any proof as to the date of delivery, is that it was executed and delivered on the day of its date.

It is found as a fact that defendant signed the subscription paper on or about July 1, 1869. There is no connection on their face between the two instruments, and a finding that the defendant signed the subscription paper on or about July 1, certainly raises no presumption that he signed it before May 12. Nor is there anything in the contract that tends to raise a presumption that it was not executed and delivered until after the defendant had signed the subscription paper. Nor can we infer it from the circumstance that this altogether independent instrument authorizes five persons, (of whom those who entered into said contract were four,) or a majority thereof, to make such a contract as they may deem necessary to insure the erection of such a hotel.

These several subscription papers may have been drawn up and put in circulation, and persons may have signed them before the contract was entered into, but if the contract was not entered into till after July 1, it was for the plaintiffs, who put it in evidence, and upon whom the burden of proving a consideration for defendant's promise rested, to have shown that circumstance.

If the contract was entered into before the defendant signed the subscription, the plaintiffs fail to take the first step towards proving that the trustees incurred expenses, or assumed liabilities on the faith of defendant's subscription.

But in addition to this, the contract itself is directly opposed to the plaintiff's theory above mentioned, viz.: that the subscribers and their subscriptions were the *causa causans* of the whole undertaking. As already remarked, it is between Winslow and four only of the trustees, who state themselves to be owners of real estate in St. Paul, and to be desirous of the construction of a first-class hotel on the site in question; that their motive for entering into the contract is to secure to themselves the benefits and advantages of such hotel in that place; therefore, in consideration of Winslow's promise to build it, and of its erection, and the benefits accruing to them by reason thereof, they agree for themselves, their heirs, etc., to pay him $20,000 in installments as specified, and on its completion to convey to him the said site. There is not an intimation throughout the contract, that they are acting in the interest or on behalf of any but themselves; their engagement is absolute and unconditional, and is expressed to be for their own private benefit; and Winslow's agreement is in like manner with them as individuals, not as trustees for defendant.

It is impossible to see how it can be successfully contended that these parties entered into this contract relying upon the subscription of the defendant. They themselves assert that the *motive* and moving consideration therefor was an expected benefit to themselves as land owners. If they were the plaintiffs here, how could they be heard upon this record to say against this statement that the presumption is that it was the promise of the defendant that moved them to make such a contract? If they could not, their assigns cannot.

Culver et al. v. Banning.

The provision too in the contract for insurance, militates against the plaintiffs' theory. The avowed object of the subscription papers is to induce the erection of a hotel. That of the contract is to secure to the parties of the first part as land owners, the advantage and benefit of a hotel in that place, which may be impaired or defeated by the total or partial destruction of the hotel after it is completed.

They therefore stipulate with Winslow that the conveyance of the land shall be upon the condition that he will thereafter keep the house insured for $35,000, for three years, for *their* benefit, they paying for the same, and payable to them in case of loss, or to him if he rebuild within a year.

This stipulation is altogether independent of the subscription papers, which provide that the moneys subscribed shall be used by the trustees in paying the $20,000 bonus, and for the site. It goes further than this, and contemplates the securing at their own expense a private benefit to themselves.

If the hotel is burned down, and Winslow will not rebuild, these land-owners provide for an indemnity to themselves in respect to their payments under the contract; an indemnity in which the subscribers would have no interest, for aught that appears in this case, although the trustees should have received from them all that they paid to or for Winslow. If, in point of fact, this contract was entered into in consequence of, and pursuant to, the authority in said subscription papers contained, and relying on the subscription thereto of the defendant, and the other subscribers, nothing would have been easier than to have proved the fact.

So far as the defendant, at least, is concerned, the presumption is against this, and the plaintiffs have chosen to leave it so. They cannot, therefore, call upon us to reverse the referee's decision upon a surmise that it might have been so. If the contract was not entered into on the faith of the defen-

dant's subscription, the plaintiffs of course cannot contend that the payments under it were made in consequence of the subscription; they must be taken to have been made in consequence of the covenant aforesaid of plaintiffs' assignors to make them.

But the defendant paid a part of his subscription. That circumstance, however, does not prove that he was under obligation to pay. If his promise to give three hundred dollars was gratuitous, paying sixty dollars on it would not make it binding.

Various other objections are urged by the defendant against the plaintiffs' right to recover in this action, but unless we are to assume that the contract of Burbank, Culver, Daily and Wilkin with Winslow, purporting to have been made on their own private account, and for their individual benefit, and appearing to have been made *before* the defendant's subscription, was, in fact, made *after* it, and in consequence and on the faith thereof, it is unnecessary to consider them.

The case, as it stands, shows no consideration for the defendant's promise.

Order denying a new trial affirmed.