## DOKKEN v. PAGE.

(Circuit Court of Appeals, Eighth Circuit.  July 30, 1906.)

No. 2,399.

1. BANKRUPTCY—PETITION BY ADVERSE CLAIMANT OF PROPERTY—NATURE OF PROCEEDING.

A receiver in bankruptcy, by order of the court, took possession of a stock of goods which the bankrupt had transferred to a third person, and, by stipulation between the petitioning creditors, the trustee, and the transferee, the latter filed an intervening petition in the court of bankruptcy setting up his claim to the goods as a bona fide purchaser.  *Held*, that the proceeding on such petition was essentially one in equity relating to property in the custody of the court, and triable by the court without the intervention of a jury.

2. SAME—FRAUDULENT TRANSFER OF PROPERTY—PURCHASER OF STOCK OF INSOLVENT MERCHANT.

A purchaser of the entire stock of an insolvent retail merchant, within four months prior to his bankruptcy, is presumptively a purchaser with knowledge of the insolvency, and the burden rests upon him to show by satisfactory evidence that his purchase was in good faith for a present fair consideration, and that he did not know or have reason to believe, after making all reasonable inquiry, that the seller was insolvent.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 285.]

3. SAME—EVIDENCE CONSIDERED.

A bankrupt, within a few days prior to his bankruptcy, and when insolvent, sold to petitioner two stocks of goods for less than half their actual value.  The goods were bought and paid for in the evening after a short negotiation, without invoice or examination of the goods or the bankrupt's books, or any inquiry as to his financial condition.  Petitioner borrowed the greater part of the money from a banker who was present when the sale was made, and who had reason to know of the seller's insolvency.  *Held*, that petitioner had no standing in equity as a purchaser in good faith, but that the sale was fraudulent and void as against the bankrupt's creditors.

Appeal from the District Court of the United States for the District of North Dakota.

John Burke (Burke & Middaugh, on the brief), for appellant.

Fred B. Dodge (Clarence A. Webber, on the brief), for appellees.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge.  On the 13th day of May, 1905, Abraham Z. Tveten was adjudged a bankrupt in an involuntary proceeding in the United States District Court for the District of North Dakota.  Upon the appointment of a receiver of the estate of the bankrupt, under order of court, he took possession of a lot of goods, transferred and delivered by the bankrupt on or about the 19th day of April, 1905, to Nils Dokken.  Thereafter on the 24th day of June, 1905, a stipulation was entered into between the petitioning creditors in bankruptcy and E. B. Page, trustee in bankruptcy, and said Nils Dokken, the claimed purchaser of said goods from the bankrupt, that said Dokken should file in the above-named court "his complaint and intervention setting forth all the claims of the said Nils Dokken to said

stock of goods by the 1st day of July, 1905"; and that answer thereto should be filed on or before the 1st day of July, 1905; and that the cause should be set down for trial at the July term of said court. Thereafter on the 26th day of June, 1905, said Dokken filed his complaint of intervention, claiming that on the 18th day of April, 1905, he purchased of the bankrupt the stock of goods in question, paying therefor the sum of $2,800, for a present and fair consideration at the time; that he was ignorant of the insolvency of said Tveten, and did not have knowledge of any facts to put him upon inquiry as to the financial condition or insolvency of said Tveten; that the purchase was made in good faith, etc.; that the goods were turned over to the receiver in bankruptcy on the 4th day of May, 1905, in compliance with the order of court to that effect; and prayed judgment for the return of the goods or their value, alleged to be the sum of $3,000. Answer was filed, taking issue on the validity of the claim asserted, and, on trial of the issues to the court, the complaint was dismissed, from which action of the court the said Dokken has appealed.

The first error assigned is to the action of the court in refusing appellant's request for a trial by jury. This is a misconception of the functions of a court of bankruptcy in respect of the situation of this suit. The goods in question had been surrendered by appellant to the receiver in bankruptcy under order of the court. They were thereafter in custodia legis, held by the court for the purpose of administration and distribution, pari passu, among the creditors. The proper method which the appellant should pursue to assert his claim thereto was the one adopted by the petition of intervention in the court of bankruptcy, invested with equitable jurisdiction to determine whether or not the asserted claim was superior in right to that of the general creditors. The petition presented by appellant was in conformity to the stipulation that he should intervene, and it is styled "Complaint in intervention," and the petition begins as follows: "Comes now Nils Dokken and for his complaint in intervention," etc. It is essentially a proceeding in equity, triable to the court without the intervention of a jury. Barton v. Barbour, 104 U. S. 126, 134, 26 L. Ed. 672; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Dodge v. Norlin, 133 Fed. 363, 66 C. C. A. 425; Swarts v. Siegel et al., 117 Fed. 13, 16, 54 C. C. A. 399; In re Rochford, 124 Fed. 187, 59 C. C. A. 388, 393.

The claim of the intervener is a palpable fraud on the bankrupt act. It is full time that speculating purchasers from insolvent debtors should know that under the bankrupt act they cannot stop their ears and shut their eyes lest they may hear or see that such a merchant as Tveten was selling out his entire stock of goods in order to defeat his creditors in the collection of their just claims. Such speculators on chance seem to think that they can escape the statute by studiously and cunningly placing themselves in a position to half satisfy conscience by saying:

"I did not know the vendor was bankrupt. He did not so inform me; and I did not ask him. I did not know about his creditors, as I did not examine

his books. I did not take an inventory of the goods or carefully examine them, as I had a general knowledge of their character, and did not look further"—and the like.

Under the bankrupt act such a purchaser, within the four months' limitation, is presumptively a purchaser with knowledge. To protect his purchase the burden rests upon him to show satisfactorily that he was purchaser in good faith; that he paid a present, fair consideration for the property; and that he did not know or have reason to believe that the vendor was insolvent.

The pronouncement of the Supreme Court in Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489, as to what will constitute an innocent purchaser within the meaning of the bankrupt act, as applied to the facts of the case at bar, has ever since been the recognized rule of law, and has been repeatedly followed on the circuits under the present bankrupt act. That was the case of a merchant who sold his entire stock of goods out in a lump sale to a purchaser. After observing that the ordinary course of such a merchant's business was to sell at retail from a miscellaneous stock of goods; and that as long as he pursued the course of a retailer in disposing of his goods his creditors could not reach him, even if he had a concealed purpose to defraud them, the court said:

"But it is wholly a different thing when he sells his entire stock to one or more persons. This is an unusual occurrence, out of the ordinary mode of transacting such business, is prima facie evidence of fraud, and throws the burden of proof on the purchaser to sustain the validity of his purchase."

The court then adverts to the fact that the purchaser undertook to overthrow the presumption of the vendor's intention to commit a fraud on his creditors by showing that he paid full value for the goods, in ignorance of the vendor's financial condition. The court then said:

"But the law will not let him escape in this way. The question raised by the statute is not his actual belief, but what he had reasonable cause to believe. In purchasing in the way and under the circumstances he did, the law told him that a fraud of some kind was intended on the part of the seller, and he was put on inquiry to ascertain the true condition of Mendelson's [the bankrupt vendor] business. This he did not do, nor did he make any attempt in that direction. Indeed, he contented himself with limiting his inquiries to the object Mendelson had in selling out, and to his future purposes. Something more was required than this information to repel the presumption of fraud which the law raised in the mere fact of a retail merchant selling out his entire stock of goods. If this sort of information could sustain the sale, the provision of the bankrupt law we are considering would be no protection to creditors, for any one in Mendelson's situation, and with the purpose he had in view, would be likely to give the party with whom he was dealing a plausible reason for his conduct. The presumption of fraud arising from the unusual nature of the sale in this case can only be overcome by proof on the part of the buyer that he took the proper steps to find out the pecuniary condition of the seller. All reasonable means, pursued in good faith, must be used for this purpose. If Summerfield [the vendee] had employed any means at all directed to this end, he would have discovered the actual insolvency of Mendelson. In choosing to remain ignorant of what the necessities of his case required him to know, he took the risk of the impeachment of the transaction by the assignee in bankruptcy, in case Mendelson should, within the time limited in the statute, be declared a bankrupt."

See In re Pease (D. C.) 129 Fed. 446; In re Moody (D. C.) 134 Fed. 628, 631; Dutcher v. Wright, 94 U. S. 557, 24 L. Ed. 130.

The evidence in the case at bar shows that on the 18th day of April, 1905, the said Tveten owned a stock of goods at the town of Leeds, N. D., and also a stock of goods at the town of Niles, N. D. After allowing every reasonable deduction for their condition, said stocks were worth, in the usual course of business to a merchant, between $5,000 and $6,000. According to his schedules in bankruptcy, Tveten then owed $8,129. He was being pressed by his creditors and was in fear of the institution of bankruptcy proceedings. He and the appellant claim that they met on the 18th day of April, 1905, when the subject of the sale and purchase of the goods was broached. Without more, after business hours, in the nighttime, these two parties met in the claimant's storeroom in Leeds and consummated the sale of the entire stock of goods at Leeds and at Niles, at the price of $2,800. There was present at this storeroom that evening one Iverson, president of the bank at Leeds, who bore intimate business and personal relations to the complainant, who had reason beyond question to know that Tveten was in financial straights, that claims were held against him at the bank, and who was undoubtedly helping Tveten to get rid of the goods with the view of having the claim of the bank against him settled. Neither of these parties, in their examination as witnesses, would tell any detailed conversation between them during this negotiation. They simply talked about what the goods could be had for. The complainant made an offer of $2,000, and they finally agreed upon $2,800. This was concluded about 10 o'clock p. m., and thereupon the parties left the store and went to Iverson's bank, where a certified check for $2,800 was made in favor of Tveten. At the time the complainant had but $700 to his credit in the bank, and the president thus accommodated him, upon his assurance of giving collateral security on some land on which there was a mortgage, and perhaps some personal property. The next day Tveten paid off the debts held against him by the bank, and some other debts to the amount of about $700, and claims that he converted the balance into national currency and sent $1,200 of it by letters to his father in Norway. No invoice of the goods was taken, and only the most cursory inspection, with the sweep of the eye, was made. Although an inventory of these goods was taken in the month of February preceding, showing a valuation of over $8,000, this inventory was not called for. No examination of the books was made or asked for, although present in the store. No inquiry was made respecting the indebtedness of the claimant. The stock of goods at Niles, some four miles distant, was not even then seen by the complainant. The next day the complainant went to Niles and had the goods there loaded into eight wagons and hauled over to Leeds, when he began selling some of the articles as rapidly as possible, and at low rates.

There are other facts and circumstances in evidence which persuade a nonsuspicious mind that the complainant had knowledge of

the straightened condition of Tveten's affairs, and that he was conscious of obtaining his property at a great sacrifice because of that fact. Such a vendee has no standing in a court of equity as a purchaser in good faith, for a present, fair consideration, without knowledge of, or reason to believe that his vendor was then insolvent.

The decree of the District Court is therefore affirmed.