### HOUCK v. CHRISTY et al.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1907.)

No. 2,350.

1. APPEAL—FINDING OF MASTER—CONCURRENCE BY TRIAL COURT—REVIEW.

Finding of a master, concurred in by the trial court, will be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence; but such findings are not conclusive on the appellate court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3996–4005.]

2. BANKRUPTCY—BONA FIDE PURCHASER—EVIDENCE.

Evidence held sufficient to charge purchasers of a bankrupt's property, out of the regular course of business and shortly before he became a bankrupt, with notice that the sale was being made by him in fraud of creditors, and that such purchasers were therefore not entitled to protection against an action by the bankrupt's trustee to recover the property or its value as bona fide purchasers for value.

3. SAME—PRIMA FACIE EVIDENCE.

In the absence of a statutory provision in a bankruptcy act that a sale not made in the ordinary course of business of the debtor shall be prima facie evidence of fraud, the fact that a sale or conveyance is made out of the usual course of business does not, without more, render it prima facie fraudulent; but it may be a badge of fraud, depending for its effect on the surrounding facts. Dokken v. Page, 147 Fed. 438, 77 C. C. A. 674, explained and limited.

Appeal from the District Court of the United States for the District of Kansas.

W. G. Fairchild, for appellant.

David Ritchie and Kos Harris, for appellees.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This is an appeal from a decree dismissing a bill by a trustee in bankruptcy to recover property, or the value thereof, which, it is conceded, was transferred to the appellees by the bankrupt with the intent and purpose on his part to hinder, delay, and defraud his creditors, and within four

months prior to the filing of the petition in bankruptcy. The master, to whom the case was referred, with instructions to take and report the evidence with findings of fact, found that the appellees were purchasers in good faith and for a present fair consideration. An exception by the trustee to this finding was overruled by the court, and the finding approved.

Without any conflict the evidence discloses these facts: Stephenson, the bankrupt, was a country merchant at Scott, Kan. Christy, one of the appellees, was the cashier of a small bank at Scott, and Cover, the other appellee, owned and conducted a small hotel at that place. Stephenson's property consisted of a store building and lot, a stock of general merchandise, book accounts, and a homestead. The homestead was of very little value by reason of the uncertain nature of the title, was exempt from execution, and is not in controversy. Stephenson approached Christy one morning with a proposal to sell the entire property. During the day brief negotiations were had between Stephenson and Christy, and between Christy and Cover, in which no difficulty was experienced in agreeing on satisfactory terms, and that evening between 9 and 10 o'clock the transfer was effected; the homestead and book accounts going to Christy, and the store building and lot, with the stock of merchandise, going to Cover. All three were present when the transfer was effected, and participated therein; it being understood that Christy was primarily the purchaser of the entire property, and that Cover was a subpurchaser of what was transferred to him. For the entire property Christy was to pay Stephenson $2,200 in cash, which was 75 per cent. of its fair value, if allowance be made for two mortgages on the store building and lot, the payment of which was assumed by the purchaser. For the property transferred to him, Cover conveyed his hotel to Christy, executed a note to him for $750, and assumed the payment of the two mortgages. The next morning Christy paid Stephenson $2,200 in this way: He handed him $1,280 in currency, $720 in six drafts made payable to persons living in Scott, placed $48 to the credit of Christy's brother in the bank, and applied $152 in payment of a note of Stephenson's held by the bank. The largest draft was for $400, and was made payable to Stephenson's wife. Although Stephenson was accustomed to deposit his money in the bank and to pay it out by checks, there was no explanation of why this money was not placed to his credit in the usual way, or of why drafts were taken in favor of his wife and other residents of Scott; and, although only $2,200 was paid, or intended to be paid, Christy wrote out a check to Stephenson for $2,700, which was indorsed by him and retained by Christy. Stephenson was insolvent at the time; his obligations to nonresident creditors, such as wholesale merchants, being in excess of the fair value of his property. Some time before he had mortgaged the store building and lot to a local creditor for $300, and shortly thereafter had again mortgaged it to the same person for the further sum of $200. He had also given a chattel mortgage for $50 upon the stock of merchandise two or three months before. These mortgages were shown upon the public records at Scott, which

were examined by both Christy and Cover. Within 40 days Christy's bank had returned unpaid two drafts drawn on Stephenson by mercantile creditors for $102.34 and $126.94 actually due them, and another such draft for $170.44 was in the bank for collection at the time of the transfer. For over four months Stephenson's balance in the bank had been very small, and practically all of his deposits had been checked out soon after they were made. His balance was $5.40 at the time of the transfer. The bank also held his note for $152, which was long past due. A surety thereon had asked to be relieved of his obligation, saying that the note had run as long as it ought to, and, acting upon this, Christy had obtained from Stephenson and his wife, as additional security, a deed for the store building and lot and another for the homestead; the name of the grantee being left blank in each. When the transfer was made, Christy, in the presence of Stephenson and Cover, inserted Cover's name in one deed and his own in the other. Before the transfer Christy and Cover made only a cursory examination of the stock of merchandise, as by walking through the store, and a new consignment of goods amounting to $375, which was then unopened, was not noticed. Christy merely glanced at the book accounts, and made no calculation of their amount, or of what proportion of them was collectible. No inventory of the merchandise was made; nor was there an examination of the original invoices, or of the books, to ascertain the terms on which Stephenson had purchased, or the extent of his mercantile obligations. When interrogated four days thereafter by a representative of one of Stephenson's creditors, Christy said he had paid $3,000 in cash for the property, and Cover said he had paid partly in property and partly in cash, both statements being materially false; and still later Christy, when being examined under oath in respect of the transaction, repeatedly and falsely stated that he had paid $2,700 in money and drafts.

Upon the hearing before the master Cover did not testify, nor was his failure to do so explained. Christy, whose testimony was in some respects unsatisfactory and contradictory, testified that, at the time of the transfer he had no knowledge of Stephenson's insolvency, or of his intention to hinder, delay, or defraud his creditors, and that Stephenson had been usually very prompt in making payments. To the question, "did you ask Stephenson anything about his indebtedness?" he answered:

"No, sir; I did not, with the exception, I believe, when the sale was made, I asked him if he had any indebtedness. He said: 'No, with the exception of a few sundry accounts.' Something to that effect."

Probably referring to Christy's testimony just recited, the appellees insist that, as there was some competent evidence to sustain the finding that they were purchasers in good faith, this question is not open for re-examination by us. The true rule, however, in such cases as this, is that the findings of the master, concurred in by the court, are to be taken as presumptively correct, and will be permitted to stand unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the

consideration of the evidence, but are not conclusive. Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Girard Ins. Co. v. Cooper, 162 U. S. 529, 538, 16 Sup. Ct. 879, 40 L. Ed. 1062; Moffatt v. Blake, 75 C. C. A. 265, 145 Fed. 40. We have no disposition to depart from this rule. With it well in mind, we have attentively examined all the evidence, and in our opinion that which stands uncontradicted forbids that the finding of good faith on the part of the appellees should be permitted to stand.

One is not a purchaser in good faith, if he purchases with knowledge of the fraudulent intent of the vendor, or under such circumstances as should put him upon inquiry as to the object for which the vendor sells. Jones v. Simpson, 116 U. S. 609, 614, 6 Sup. Ct. 538, 29 L. Ed. 742. Apart from what Christy had learned through his connection with the bank, he and Cover knew that Stephenson was engaged in a business in which men usually have creditors, that he had been recently incumbering his property for small amounts, that he was hastily disposing of all of it for much less than its fair value, that he was insisting that he be paid in cash, which it is easy to conceal from creditors, and that the transaction was altogether unusual. Plainly, therefore, they had knowledge of what reasonably should have put them, as prudent men, upon inquiry as to his solvency and purpose, and were chargeable with all the knowledge which would have been acquired by prosecuting the inquiry with reasonable diligence; which they did not do. Wager v. Hall, 16 Wall. 584, 601, 21 L. Ed. 504; Shauer v. Alterton, 151 U. S. 607, 621, 14 Sup. Ct. 442, 38 L. Ed. 286; Walker v. Collins, 1 C. C. A. 642, 50 Fed. 737; Brittain v. Crowther, 4 C. C. A. 341, 54 Fed. 295; Phillips v. Reitz, 16 Kan. 396; Kurtz v. Miller, 26 Kan. 314; Gollober v. Martin, 33 Kan. 252, 6 Pac. 267. Moreover, we think the evidence before recited brings the case well within the rule that badges of fraud altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof of fraudulent intent on the part of both vendor and vendee. Castle v. Bullard, 23 How. 172, 187, 16 L. Ed. 424; Wager v. Hall, 16 Wall. 584, 601, 21 L. Ed. 504.

We have not failed to consider the appellant's contention that this case is necessarily ruled by Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489, where it was held that a sale, assignment, transfer, or conveyance made out of the usual and ordinary course of business of the debtor, as a sale by a retail merchant of his entire stock of goods, is, without more, prima facie fraudulent, and puts upon the vendee the burden of proving that he purchased in good faith. But, as that decision turned upon the provision in the former bankruptcy act, "and if such sale, assignment, transfer, or other conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud," and as the present act contains no such provision, we do not assent to the contention. In the absence of such a statutory provision, the fact that a sale, assignment, transfer, or conveyance is made out of the usual and ordinary course of business does not, without more, render it prima facie fraudulent; but it may be a badge of fraud, of little or considerable influence, de-

pending upon the surrounding facts. 2 Bigelow on Fraud, p. 439.; Bump on Fraudulent Conveyances (4th Ed.) § 47; 20 Cyc. 485; Bigelow v. Doolittle, 36 Wis. 115; Sexton v. Wheaton, 8 Wheat. 229, 250, 5 L. Ed. 603. It may be that, in the recent case of Dokken v. Page (C. C. A.) 147 Fed. 438, involving a sale by a retail merchant of his entire stock of goods, we gave undue prominence to the language of the court in Walbrun v. Babbitt; but it was not our intention to say that the fact that the sale was out of the usual and ordinary course of business was, when taken alone, prima facie evidence of fraud under the present bankruptcy act, but only that it was a circumstance which, in connection with the surrounding facts disclosed in the opinion, vitiated the sale there under consideration.

The decree is reversed, with instructions to enter a decree against Christy and Cover for the store building and lot and the stock of merchandise, or their value, and against Christy for the book accounts, or their value.