GUSTAV J. GILBERT v. LOUIS GONYEA.[1]

March 6, 1908.

Nos. 15;360—(76).

**Fraudulent Conveyance—Good Faith of Vendee.**

A creditor of a vendor of a stock of goods recovered judgment on July 7, 1906. On an execution issued three days later, the sheriff levied on a stock of hardware and a bank deposit. Thereupon the vendee of the judgment debtor brought this action against the sheriff to replevy the property so levied upon under the execution. The coroner, under this writ of replevin, took the property from the sheriff. The property was not rebonded by the sheriff. The jury returned a verdict for the vendee for the possession of the goods. It is *held:*

1. The vendee's failure to serve an affidavit of title under section 4213, R. L. 1905, did not avoid the verdict, in view of the course of trial. The only issue tried was whether the transfer was actually made in good faith.

2. The failure of the vendee to secure an inventory, or inquire as to the vendor's creditors and the amount owing each, rendered the sale presumptively fraudulent and void under sections 3496 and 3503, R. L. 1905.

3. The burden rested upon the vendee to rebut this presumption and show that the sale was made in good faith.

[1] Reported in 115 N. W. 640.

4. The vendee sustained the burden of showing that the stock of goods was bought and paid for in good faith.

5. The vendee did not sustain the burden of showing that the balance in bank was his money.

Action of replevin in the district court for Polk county to recover $4,446.09, the value of the goods levied upon by defendant as sheriff. The case was tried before Watts, J., and a jury which found that plaintiff was the owner and entitled to possession of the property in question. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Remanded with directions to affirm as to the goods, and to direct judgment in favor of defendant as to the money in bank levied upon.

*George S. Grimes*, for appellant.

*E. O. Hagen* and *W. E. Rowe*, for respondent.

JAGGARD, J.

On March 24, 1905, C. J. Gilbert made a note of $2,051.15 to the Minneapolis Plow Works, payable November 1, 1905. January 18, 1906, suit was commenced against C. J. Gilbert by the plow works to recover the balance due on this note, and judgment was recovered thereon against Gilbert July 7, 1906, for $1,782.78. On July 19, 1906, an execution was issued on this judgment and delivered to the defendant, the sheriff of Polk county, for service. The sheriff, under this execution, levied upon a stock of hardware and a deposit of $446.-09 in the Bank of Crookston in the name of "One Price Hardware Store." Thereupon the plaintiff, Gustav Gilbert, a brother of the judgment debtor, brought this action in replevin against the sheriff to recover the property levied upon under the execution. Under the writ of replevin the coroner took the property from the sheriff and delivered it to the plaintiff. The property was not rebonded by the sheriff. The jury rendered a verdict for plaintiff for the possession of the property. Defendant appeals from the order of the trial court denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

1. Defendant insists that the verdict for plaintiff is not sustained by the evidence, but is contrary to law, because it does not appear

from the pleadings or evidence that plaintiff ever made or served on defendant sheriff any affidavit of his title or right to possession of the property in question, under section 4213, R. L. 1905. It is unnecessary in this case to consider or to determine whether or not this provision was designed merely for the protection of the officer in the discharge of his duty or whether it is necessary for the person replevining from a sheriff first to make or to serve on the sheriff the required affidavit of title. The court gave the following instructions to the jury: "It is claimed on the part of the defendant that the sale was made for the purpose of hindering, delaying, or defrauding the creditors of Charles Gilbert (the vendor), and for that reason is void as to such creditors; and this is the question for you to decide in this case." To this charge no exception was taken. No assignment of error is based upon it. The entire case was tried on the theory that the one issue in the case was the question whether the transfer was actually made in good faith and was valid as to defendant.

2. The real question in the case is whether the court was justified in submitting to the jury the validity of the transfer from Charles J. to Gustav Gilbert, and whether the jury was justified in finding that such transfer was not fraudulent and void as to creditors of Charles J. Gilbert. Plaintiff knew that his brother's credit was not good, yet took no inventory, and did not inquire concerning his brother's creditors. The sale was therefore presumptively fraudulent and void. Sections 3496 and 3503, R. L. 1905; Thorpe v. Pennock Mercantile Co., 99 Minn. 22, 108 N. W. 940. The burden rested upon the plaintiff to rebut this presumption and to show that the sale was in good faith and for a proper consideration. The court so charged. We are also in full accord with the authorities with respect to fraudulent transfer arising under the bankruptcy act to which defendant refers us. For example, in Dokken v. Page, 147 Fed. 438, 77 C. C. A. 674, it is said: "It is full time that speculating purchasers from insolvent debtors should know that under the bankrupt act they cannot stop their ears and shut their eyes, lest they may hear or see that such a merchant as [the vendor] was selling out his entire stock of goods in order to defeat his creditors in the collection of their just claims. Such speculators on chance seem to think that they can escape the statute by studiously and cunningly placing themselves

in a position to half satisfy conscience by saying: 'I did not know the vendor was bankrupt. He did not so inform me, and I did not ask him. I did not know about his creditors, as I did not examine his books. I did not take an inventory of the goods, or carefully examine them, as I had a general knowledge of their character, and did not look further'—and the like." And see In re Knopf (D. C.) 17 Am. Bankr. Rep. 48, 146 Fed. 109; Houck v. Christie, 152 Fed. 612, 81 C. C. A. 602.

The substantial question on the merits is one of fact, viz., whether actual proof so far rebutted that presumption as to have justified the trial court in refusing to direct a verdict for the defendant. The charge of the court submitted to the jury, first, the matter of the consideration; second, the intent of the vendor to hinder or defraud his creditors, and knowledge of the vendee of that intent; third, the general question of the good faith of the transfer. No requests to charge were made, nor exceptions taken after the charge was delivered, nor set forth in the notice of motion for a new trial.

First. The court properly charged the mere fact that one "is indebted will not prevent him from selling his property to any one he pleases for an honest and fair consideration, though the effect of the sale will be to prevent creditors from reaching the property.  *  *  * The only question or figure that the amount a thing sells for cuts in the case is as bearing upon the probability or improbability of it being a good-faith sale or made for the purpose of hindering, delaying, or defrauding creditors." This is obviously correct law. Nor is it subject to contention that the payment of a full consideration tends to prove the good faith of the sale attacked by creditors of the vendor, just as the payment of an inadequate consideration tends to disprove it. The defendant contends that here a stock of hardware worth $8,-000 to $9,000 was purchased by the plaintiff for a suspiciously small consideration; that, indeed, the plaintiff's own case shows the consideration to have been $6,200. There was, however, testimony from which it might have been calculated that the vendor originally purchased the stock with an equity in land and other property which cost the vendor some $1,222 in all, and that plaintiff paid the vendor for that stock similar equity in the same land, together with some $1,000 cash and assumed debts to the possible extent of $1,500. It is ob-

vious that when an owner trades his equity in land as part consideration for a stock of goods, then sells that stock to a vendee, who pays. him in part by a similar equity in the same land, the valuations of the articles traded have a significance entirely different from that to be attributed to them in a purchase of goods for cash. Defendant also insists that the plaintiff testified in supplementary proceedings that the total consideration was $2,500. He testified, however, at the same time, that there was other and additional consideration. Certainly the equity in land constitutes a large part of the consideration paid for the stock of goods by Charles J. Gilbert and for the transfer by him to the plaintiff. The controversy as to consideration, standing by itself, was fairly determined by the jury.

Second. The controversy as to the fraudulent intention of Charles. Gilbert in selling, and as to the notice or knowledge of Gustav Gilbert in buying, was submitted by the court to the jury on the proper theory. That the testimony made out a prima facie case of fraud has previously herein appeared. That it made out a conclusive case on this particular point does not appear from the record. The especially significant testimony on which defendant relies is that Charles stated to his brother that he did not have credit enough to carry on the business and plaintiff knew that his brother's credit was not good. That one brother, under such circumstances, should appeal to another to take his business off his hands, was not unnatural. The determination of this question necessarily involves a view of other parts of the transaction to which reference will be subsequently made. In that view we think the court properly concluded that it was for the jury to determine the motives of the vendor and whether the circumstances. were sufficient to put the vendee upon inquiry. The authorities on the subject will be found collected in 20 Cyc. 483. The rule is laid down in 14 Am. & Eng. Enc. (2d Ed.) 291, that "mere knowledge of the purchaser that the vendor is in failing circumstances or insolvent, or that there are suits pending against him, is not in itself sufficient to put the purchaser upon inquiry."

Third. The remaining consideration as to the general bona fides of the transaction on which defendant relies is this: That the goods were never delivered; that there was no change of possession; and that the title remained in the vendor. The record shows that the ven-

dor continued in actual possession and management of the business, the same after as before the transfer. Even the clerks in the store did not know there had been any change of proprietors. The business was operated in the name of the "One Price Hardware Store" at the time of the levy just the same as it had been before the alleged sale to plaintiff. The bank account was originally kept in the Merchants' Bank, wherein the vendor deposited the proceeds of the sale in his own name and disbursed money on his private account. Not until July 12, 1906, was an account opened with the Bank of Crookston. The same practice applied to it.

Plaintiff's case in answer was as follows: He employed Charles J. Gilbert at $100 per month, and directed him to put the bank account in the name of the "One Price Hardware Store." Prior to the levy he had been compelled to put additional money in the business, and early in March he sent one of his clerks from another place of business to work in the hardware store; that clerk remained there "continuously since that time." About $1,800 worth of new goods had been added to the stock on his credit and in his name as proprietor. One of the plaintiff's clerks, who testified that they did not know about the transfer, was working in the barn or warehouse most of the time. The plaintiff testified without objection that he was in full possession of the stock prior to the time of the levy. Publicity was given to the transfer by advertising it in the papers. The stationery was printed so as to indicate that Charles was not the owner, and on the hotel registers the advertisements were: "One Price Hardware Store, C. J. Gilbert, Proprietor." Plaintiff also personally made reports to the commercial agencies after he had taken possession of the store. He made the same representations to wholesale houses, and received goods from them, after making such reports and on the strength thereof. He also insured the stock in his own name, and took out eight different policies thereon. He left a bill of sale in the office of the clerk of the city in which the business was conducted. A certified copy admitted in evidence shows that it was duly entered in a certain book of chattel mortgages on a given page in the same place where chattel mortgages are entered. With the legal effect of this action we have no present concern.

These circumstances do not show as a matter of law that there had ever been a change of possession, nor that the transfer was fraudulent. The retention of the vendor in the employment of the vendee was fairly a consideration for the jury. It was not conclusive evidence. "Where, however, there has been a sufficient delivery to show a bona fide intention to transfer the actual title, the vendee may, without losing his rights as against the vendor's creditors, employ the vendor to manage or assist in the management and care of the property which has been sold; his connection therewith being of such a character as to hold out no indication of ownership." 14 Am. & Eng. Enc. (2d Ed.) 379, and cases cited in notes; Bruggemann v. Wagener, 72 Minn. 329, 75 N. W. 230; Vose v. Stickney, 19 Minn. 312 (367). It is, of course, not necessary nor do we understand it to be the contention of the defendant that actual delivery was necessary. A symbolical, constructive, or formal delivery was sufficient. 14 Am. & Eng. Enc. (2d Ed.) 374, and cases cited. Taking the case as a whole, we think the trial court's ruling must be sustained, except as hereinafter stated. Many circumstances have led us to examine the entire record minutely. Only the most conspicuous matters have been here referred to. In view, however, of the actual course of trial, of the practice as to the charge and motion for a new trial and assignments of error, and in view of the familiar rule in Hicks v. Stone, 13 Minn. 398 (434), we are constrained to affirm the trial court on the points so far referred to.

3. The sheriff levied upon the stock of goods and upon a balance in bank amounting to $446.09, which stood in the name of "One Price Hardware Store." Defendant insists that this was the money of Charles J. Gilbert; plaintiff, that it was his. The testimony is practically conclusive that Charles Gilbert commingled his own funds with those of the plaintiff. It is true there is testimony that Charles had overdrawn his account. That testimony is, however, merely to conclusions. Taking the record as a whole, we think it shows that a portion of this money so levied on belonged to Charles. The burden of proof rested on the plaintiff. He failed to show either that all, or that a definite part, of this deposit belonged to him. Under the circumstances the trial court should have directed judgment for defendant that the levy stand as to the money in bank. The case is

accordingly remanded, with directions to affirm with respect to the stock of goods and to direct a judgment for the defendant as to the money in bank levied upon.

Affirmed, except as herein stated.