### ROBIE v. CHMIELEWSKI.

(District Court, D. Minnesota, Fifth Division. February 18, 1927.)

1. Bankruptcy &#8258;303(1)—Bankrupt's sale of merchandise stock held presumptively fraudulent, under Minnesota Bulk Sales Law (Gen. St. Minn. 1923, § 8473).

Bankrupt's sale of stock of merchandise and other assets *held* presumptively fraudulent for noncompliance with Bulk Sales Law (Gen. St. Minn. 1923, § 8473).

2. Bankruptcy &#8258;303(5)—Purchaser of bankrupt's assets held not to have proven by fair preponderance of evidence that he was good faith purchaser for fair consideration (Gen. St. Minn. 1923, § 8473).

Defendant, in suit by trustee in bankruptcy to set aside transfer of stock of merchandise and other assets, which was presumptively fraudulent under Gen. St. Minn. 1923, § 8473, *held* not to have sustained burden of proof by fair preponderance of the evidence that he was purchaser in good faith for fair consideration.

3. Bankruptcy &#8258;186(1)—In trustee's suit to set aside transfer of bankrupt's assets, purchaser was allowed credit for what he had parted with (Gen. St. Minn. 1923, § 8473).

In suit by trustee in bankruptcy to set aside conveyance of bankrupt's assets in viola-tion of Gen. St. Minn. 1923, § 8473, purchaser was allowed credit for what he had parted with.

In Equity. Suit by E. G. Robie, as trustee in bankruptcy of Anthony Kroska, against George Chmielewski. Decree for plaintiff.

Arthur R. Smythe, of Duluth, Minn., for plaintiff.

Henry H. Sullivan, of St. Cloud, Minn., for defendant.

JOHN B. SANBORN, District Judge. In January, 1924, Anthony Kroska, the bankrupt, was and had been for some time the proprietor of a general store at Duelm, an inland town in Benton county, Minn., a few miles from Foley, the county seat. He owned a stock of merchandise, inventoried by himself and the defendant at $7,962.30, and he also owned a small dwelling house on leased premises, which he occupied as a homestead, and which was worth approximately $500. He had some furniture and fixtures in his store, and a Nash truck, which he used in connection with his business. He was in debt for merchandise and money borrowed to the extent of $11,746.67. His total assets did not exceed, at their full value, $8,862.30.

The defendant, who was a lifelong friend of the bankrupt, was the owner of 60 acres of farm land in Benton county, which he acquired in 1920. After its acquisition, he put into it some $3,500 in the way of improvements. In January, 1924, it was incumbered to the extent of about $2,700. Its value was not to exceed $90 an acre, and there was no market for it. Its rental value was about $200 a year.

Some two or three weeks before January 7, 1924, the defendant learned that Kroska wanted to dispose of his business. The defendant drove to Duelm from Foley, where he then resided and was in business, and called on Kroska. Kroska looked at the defendant's land, and the defendant looked at Kroska's stock. There were negotiations. On January 7, 1924, the defendant and Kroska entered into a written agreement whereby the defendant was to take Kroska's merchandise at 75 cents on the dollar of its inventory value, to take the furniture and fixtures at $200, the Nash truck at $200, Kroska's homestead at $500, and Kroska was to take, in payment, the defendant's 60-acre farm at $135 per acre, and was to assume the incumbrance against it, and receive the balance in cash; $5 was the consideration for this agreement.

The agreement was drawn by an attorney in Foley, who acted for both parties, and who

also drew a warranty deed conveying the 60 acres of land to Kroska. This deed had never been recorded, but came into the possession of the plaintiff, and is one of the exhibits in this case. The attorney wrote to the various creditors of Kroska, on January 8, 1924, the following letter, which was mailed on its date:

"Gentlemen: Mr. Anton Kroska, of Duelm, Minnesota, has requested me to notify you, as one of his creditors, that he yesterday sold his stock of merchandise, fixtures, dwelling house, and truck to George Chmielewski, of Foley, Minnesota, for a consideration approximating not less than $6,900, the exact figures to be known upon the completion of inventory to-day being taken. He has realized for some time that it would be impossible for him to settle with his creditors in full, and some of them have been threatening suit, and he seized upon this opportunity to sell at a good price, in order that he might do better by his creditors than he would be able to do if bankruptcy was forced by some of the creditors securing a preference. The total amount of the claims against him, as near as he can determine from the invoices, is ·$10,675.51. He is willing to turn over to his creditors every cent that he has obtained for his property, and the proceeds of his sale is now in the hands of an undisclosed third party, pending satisfactory settlement ·with his creditors. If all of his creditors are agreeable to a settlement, where all· of the proceeds of the sale of his property is to be distributed pro rata among them, then that method of adjustment will go through; otherwise it is likely that bankruptcy or some other method will ensue. Will you kindly notify me at once, if such a settlement will be satisfactory to you.

"Very truly yours, Morgan J. Flaherty."

On the receipt of this letter, on January 10th, by two of the local creditors, they ascertained the nature of the trade and protested against it. On the 10th or 11th day of January, the Duluth Jobbers' Credit Bureau, representing several of the creditors, also protested. Neverthless, on January 12, 1924, the defendant paid the balance due under his contract. He gave Kroska one check ‚for $500, representing the purchase price of the homestead, and one check for $1,033.41, $200 of which was for fixtures and $200 for the Nash truck, leaving $633.41 representing the entire amount of cash paid for the merchandise.

Prior to the time that the defendant entered into the agreement with Kroska to purchase his stock, fixtures, truck, and homestead, he knew that Kroska was heavily in debt; in fact, he knew substantially what Kroska's condition was, and why it was desirable for Kroska to sell. Before the deal was consummated, the defendant had talked with several attorneys with reference to the proposed transaction, and claims that he was advised that he might safely buy the stock, if he paid what it was reasonably worth and took immediate possession of it. The defendant did not comply with the provisions of section 8473, General Statutes of Minnesota 1923, known as the Bulk Sales Law, which requires notice of such a transfer to be given to the creditors, and, in the absence of such notice, makes the sale presumptively fraudulent and void.

On January 14, 1924, Kroska filed an involuntary petition in bankruptcy. On February 15, 1924, the plaintiff, E. G. Robie, was appointed trustee and qualified. On April 3, 1924, he was directed to institute this suit to set aside the transfer by Kroska to the defendant of his assets.

Originally in this circuit, a purchaser under such circumstances as are outlined here, within four months prior to bankruptcy, was presumptively a purchaser with knowledge. To protect ·his purchase, the burden rested upon him to show satisfactorily that he was a purchaser in good faith, that he paid a present fair consideration for the property, and that he did not have reason to believe that the vendor was insolvent. Dokken v. Page (C. C. A.) 147 F. 438. Later, in the case of Houck v. Christy (C. C. A.) 152 F. 612, Judge Van Devanter—now Mr. Justice Van Devanter—said:

"In the absence of such a statutory provision [the provision in former Bankruptcy Act referred to in Walbrun v. Babbitt, 16 Wall. 577 [21 L. Ed. 489], the fact that a sale, assignment, transfer, or conveyance is made out of the usual and ordinary course of business does not, without more, render it prima facie fraudulent; but it may be a badge of fraud, of little or considerable influence, depending upon the surrounding facts. * * * It may be that, in the recent case of Dokken v. Page (C. C. A.) 147 F. 438, involving a sale by a retail merchant of his entire stock of goods, we gave undue prominence to the language of the court in Walbrun v. Babbitt; but it was not our intention to say that the fact that the sale was out of the usual and ordinary course of business was, when taken alone, prima facie evidence of fraud under the present Bankruptcy Act

[Comp. St. § 9585 et seq.], but only that it was a circumstance which, in connection with the surrounding facts disclosed in the opinion, vitiated the sale there under consideration."

[1] However, in this case, the sale, having been made without compliance with the provisions of the Minnesota statute before referred to, was presumptively fraudulent. Thorpe v. Pennock Mercantile Co., 99 Minn. 22, 108 N. W. 940, 9 Ann. Cas. 229; Gilbert v. Gonyea, 103 Minn. 459, 115 N. W. 640; Melges Bros. Co. v. Duluth Brewing & Malting Co., 118 Minn. 139, 136 N. W. 401.

In Gilbert v. Gonyea, supra, the court said:

"The sale was therefore presumptively fraudulent and void. Sections 3496 and 3503, R. L. 1905; Thorpe v. Pennock Mercantile Co., 99 Minn. 22, 108 N. W. 940 [9 Ann. Cas. 229]. The burden rested upon the plaintiff to rebut this presumption, and to show that the sale was in good faith and for a proper consideration."

In Melges Bros. Co. v. Duluth Brewing & Malting Co., supra, the words used are these:

"The sale was therefore, as the trial judge instructed the jury, presumptively fraudulent and void as to the defendant, an attaching creditor, and the burden was on the plaintiffs to show that the sale was made in good faith, without any intent to defraud creditors."

[2] The question, then, is whether the defendant in this case sustained the burden of proof, by a fair preponderance of the evidence, that he was a purchaser in good faith and paid a fair consideration for the property. The evidence shows—and there can be little, if any, dispute about it—that when Kroska entered into this agreement with the defendant he had a stock of merchandise and a going business, which, together with the fixtures and the truck, was worth approximately $6,400, taking 75 cents on the dollar as the value of the merchandise, which appears to be fair. These assets were quick assets and could be sold for cash at somewhere near their value. The equity in the 60-acre farm which was owned by the defendant was not a quick asset, and could not be sold for cash at anywhere near the value put upon it. In fact, it may be doubted whether it could be properly said to be an asset at all, being substantially unsalable. It is probably not particularly important what value is placed upon it, whether $65 or $135 an acre. Any value must largely be based upon either memories of the past or hopes for the future.

Both Kroska and the defendant were fully aware of the situation with reference to farm lands in that community. They were both fully aware that Kroska was insolvent. Kroska transferred all of his marketable assets to the defendant for $1,038.41 in cash and the equity in the 60 acres of farm land, leaving himself nothing to pay his creditors with, except the cash and this equity. He says that he made the trade for what he believed to be the best interests of his creditors. The result of what he and the defendant did was to put out of the reach of his creditors all his salable assets, and to substitute for them something which was of no substantial use to his creditors at all.

In Houck v. Christy, supra, the court said:

"Moreover, we think the evidence before recited brings the case well within the rule that badges of fraud altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof of fraudulent intent on the part of both vendor and vendee. Castle v. Bullard, 23 How. 172, 187, 16 L. Ed. 424; Wager v. Hall, 16 Wall. 584, 601, 21 L. Ed. 504."

The principal badges of fraud here are: (1) The sale by the bankrupt of his entire stock of goods and his fixtures to the defendant; (2) the failure of either the bankrupt or the defendant to notify the creditors of the nature of the proposed transfer; (3) the substitution for Kroska's quick assets of the defendant's slow asset; (4) the inadequacy of this consideration. It seems to me that the defendant has not only failed to sustain the burden of proof in this case, but that the facts demonstrate almost conclusively that the sale was fraudulent as to the creditors of Kroska.

[3] The trustee has asked the court to restore what Kroska parted with, or its equivalent in money. The defendant has been in possession of the store and the stock for two years, and has been selling it in the ordinary course of business. It would be manifestly impossible for him to return it. He has testified that the stock was not worth more than 50 cents on the dollar. In view of other testimony and the circumstances of the case, the value of 75 cents on the dollar, at which he took the stock, would be fair. The value of $200 on furniture and fixtures is justified by the evidence. He says that the Nash truck would not operate, and is not worth more than $50. That may be true, and its value will be treated as being $50. On that basis, he received from

Kroska assets of the value of $6,221.72. He paid to Kroska $1,038.41, which went to the trustee, and for which the defendant is entitled to credit. The amount which the defendant owes the trustee is $5,183.31, and the trustee may have a decree for that amount.

It is so ordered.