LUMPKIN v. FOLEY.

(Circuit Court of Appeals, Fifth Circuit. April 14, 1913.)

No. 2,435.

1. BANKRUPTCY (§ 453*)—APPEAL—JURISDICTION—SUPREME COURT.

Under the express provisions of Bankr. Act July 1, 1898, c. 541, § 25b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 553), an appeal lies to the Supreme Court of the United States from an order allowing or rejecting a claim against the estate of a bankrupt involving more than $2,000.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 914; Dec. Dig. § 453.*]

2. BANKRUPTCY (§ 466*)—APPEAL TO SUPREME COURT—EXERCISE.

Where, on appeal from an order rejecting a claim against a bankrupt's estate as secured, the claimant was entitled to a further appeal to the Supreme Court, which would necessitate the making of separate findings of fact and conclusions of law as provided by General Bankruptcy Order No. 36 (89 Fed. xiv, 32 C. C. A. xxxvi), but there was no suggestion at the argument that either side intended to avail itself of the right to a further appeal, the court would determine the same without making such findings, as though it was the court of final jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 928; Dec. Dig. § 466.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

3. BANKRUPTCY (§ 467*)—REFEREE'S FINDING—PRESUMPTIONS.

The presumption of the correctness of the finding of a referee in bankruptcy that a mortgage of all the bankrupt's assets was given to hinder, delay, and defraud creditors is materially strengthened by the concurrence therein of the District Court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 467.*]

4. BANKRUPTCY (§ 182*)—FRAUDULENT CONVEYANCES—PURCHASER IN GOOD FAITH—MORTGAGE.

Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564, 565 (U. S. Comp. St. 1901, p. 3449), declares that all conveyances, transfers, assignments, or incumbrances given within four months prior to the filing of a bankruptcy petition, with intent to hinder, delay, or defraud creditors, except as to purchasers in good faith for a present fair consideration, shall be void. Held that, where an insolvent corporation applied to claimant for a loan to be secured by a mortgage on all its assets, the effect of which would be to deprive creditors whose claims were not paid with the proceeds of the loan of the ability to enforce payment, and claimant by making any investigation could have learned that the corporation was insolvent, he was not a bona fide purchaser within such section, and the mortgage was therefore void, though a present consideration was paid therefor, and the proceeds applied to the payment of the bankrupt's debts to local creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. § 182.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. FRAUD (§ 58*)—PROOF OF FRAUD.**

That fraud is not to be presumed does not imply that it may not be proved by circumstances as well as by direct evidence, as it may arise from facts and circumstances of imposition, and may be apparent from the intrinsic nature and subject of the bargain itself.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. § 58.*]

Pardee, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of Georgia; Wm. T. Newman, Judge.

Claim of Frank G. Lumpkin against the bankrupt estate of the Walden Bros. Clothing Company. From an order (199 Fed. 315) sustaining objections of Frank D. Foley, as trustee, to the claim as secured on the ground that the mortgage securing the same had been made to hinder, delay, and defraud creditors of the bankrupt, claimant appeals. Affirmed.

Alex C. King, of Atlanta, Ga. (Henry R. Goetchius and T. Leslie Bowden, both of Columbus, Ga., and King, Spalding & Underwood, of Atlanta, Ga., on the brief), for appellant.

Slade & Swift, Love & Fort, and R. E. Dismukes, all of Columbus, Ga., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and SHEPPARD, District Judge.

SHEPPARD, District Judge. [1] This is an appeal in bankruptcy brought here under section 25b of the Bankruptcy Act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) from the District Court of the Northern District of Georgia; and, as the controversy arose from a judgment allowing or rejecting a debt or claim involving more than $2,000, an appeal lies to the Supreme Court of the United States from the decision of this court.

[2] There has been no intimation of any purpose by counsel on either side to avail themselves of the right to appeal from the decision of this court which would render necessary separate findings of fact and conclusions of law thereon, as contemplated in General Order No. 36 (89 Fed. xiv, 32 C. C. A. xxxvi). In the absence of such suggestion, which appears should have been made at the argument (Knapp v. Milwaukee Trust Co., 162 Fed. 675, 89 C. C. A. 467), we proceed to consider and determine the questions raised by assignments on the record. An involuntary petition in bankruptcy was filed by creditors, statutory in number and amount of claims, against the Walden Bros. Clothing Company, a corporation of Georgia, and among other acts of bankruptcy charged substantially that:

"The said company while insolvent did on the 15th day of January, 1912, assign and transfer its entire assets of every kind and character to Frank G. Lumpkin of Columbus, Ga., or other persons unknown to petitioners with intent to hinder, delay, and defraud its creditors."

On January 31, 1912, the bankrupt filed its answer, denying insolvency, and denying specifically the acts of bankruptcy charged, but,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

further answering, admitted that it did on the 15th day of January mortgage its stock of merchandise to Frank G. Lumpkin in the sum of $9,250, and that the money thus derived went to pay the National Bank of Columbus and other creditors, and "to be used in its business"; further admitting that it transferred its accounts to said Lumpkin as an "additional security" to him for money advanced, but without intent to hinder, delay, or defraud its said creditors. The answer further states that George F. Walden, president of said corporation, the only officer giving his attention to the business of the company, had been for a considerable time unable by illness to attend to the business, and for that reason expressed a willingness that the corporation be adjudged a bankrupt. Attached to the answer were schedules of bankrupts' indebtedness, showing assets consisting of the stock of merchandise included in the mortgage, valued at $5,327.29; also open accounts of the estimated value of $2,103.75, which comprised practically all the assets of the bankrupt.

In due course of administration the case was referred to a referee, and on March 16, 1912, Lumpkin filed his claim to the stock of merchandise and accounts of the said company, averring that the debt of the company to him was evidenced by a note dated January 15, 1912, with interest at 8 per cent. per annum, payable on demand and secured by a mortgage of the same date on the goods and stock of merchandise, furniture and fixtures, etc., in the store of said company. In due course, March 16th, the trustee, F. D. Foley, filed objections to the claim of Lumpkin, mortgagee, on the ground that the mortgage was intended to hinder, delay, and defraud the creditors of the bankrupt, and that the mortgagee had reasonable grounds to believe the intent and purposes of the bankrupt in making the transfer.

The referee's finding May 29, 1912, on the facts was adverse to the claimant, and the main facts on which he predicated his report may be here stated to advantage: The Walden Bros. Clothing Company had been in business at Columbus about six years. That George F. Walden and Chas. L. Walden, brothers, were president and secretary respectively of the corporation. That the two brothers owned the stock of the corporation, and that George F. Walden, president, had for five years practically the entire management and supervision of the business. Chas. L. Walden resided at Troy, Ala., where he was engaged in business. The stock of merchandise in the store at Columbus comprised practically all of the assets of the company. Lumpkin, the claimant, was a business man residing in Columbus, and was secretary of a building and loan company, and made personal loans occasionally when the security was satisfactory. Two months preceding the transaction Walden had been confined to his house with typhoid fever; during this time the business had been run by "Mr. Chancellor." That about the 12th of January Walden from his house called up one Reich, president of the loan company of which Lumpkin was secretary (Reich was also a director of the National Bank of Columbus), and requested him (Reich) to obtain a loan for Walden Bros. Clothing Company of $9,000 with which to pay his creditors and continue in business. Shortly afterwards Reich met Lumpkin, and made known Walden's request for a loan, and delivered to the latter an unsigned

statement of Walden Bros. Clothing Company's business, including assets and liabilities, as of September 1, 1911, which showed:

| Assets | | Liabilities | |
|---|---|---|---|
| Accounts Receivable | $ 8,000 00 | Capital stock | $17,000 00 |
| Merchandise on hand | 23,000 00 | Borrowed money | 10,000 00 |
| Furniture and fixtures | 1,300 00 | Open accts. not due | 900 00 |
| | | Open accts. past due | 1,400 00 |
| | | Surplus in business | 2,800 00 |
| Total assets | $32,300 00 | Total liabilities | $32,100 00 |

This statement was apparently satisfactory to Lumpkin, and he agreed to loan, and did loan three days thereafter, $9,250 to Walden. At the suggestion of Walden, Bowden, an attorney, in the absence of Lumpkin's regular attorney, was engaged to prepare the papers. The corporation had failed to keep any record of its meetings for several years; Bowden procured the minute book of the corporation and the books of account of the company, and in his office prepared and supplied the minutes of the proceedings of the corporation up to date. Walden in the meantime had procured Baird of the firm of Power & Baird, creditors of Walden Bros. Clothing Company to the extent of $645, to telegraph Chas. L. Walden, secretary, at Troy to come immediately to Columbus. Bowden, the attorney, was requested by George F. Walden to meet Chas. L. Walden at the station upon his arrival, 12 o'clock m., Monday, January 15, 1912, and to explain the proposed transaction with Lumpkin, and the necessity of the presence of the secretary to verify the minutes and complete the transfer to Lumpkin. On the same day, January 15, 1912, the transaction was consummated by the execution and delivery of the note and mortgage to Lumpkin for $9,250, payable on demand. At this moment the liabilities of the bankrupt were approximately $20,000, and assets approximately $9,181.04, as shown by appraisement filed March 20, 1912, none of which indebtedness was secured, except the notes to the National Bank of Columbus, aggregating $7,875, which bore the individual indorsement of the two Waldens, president and secretary, respectively, of the corporation. This indebtedness to the bank was evidenced by several notes; only two of $250 each were past due, the others fell due at sundry dates from one to three months thereafter.

At this time the bankrupt owed C. E. Westbrook of Columbus $675, Power & Baird of the same place, "all friends" of the Waldens, $645.-39. Upon receipt of the loan from Lumpkin, January 15th, the bankrupt proceeded to pay off on the same day the indebtedness to the bank, matured and unmatured, and to pay Westbrook, Power & Baird, and other local creditors. These payments consumed practically the money obtained on the mortgage to Lumpkin on bankrupts' stock of merchandise, furniture and fixtures, and open accounts. At that time the corporation owed other creditors accounts past due for merchandise of $1,400, and open accounts not due of $900, none of which was paid out of the proceeds of the mortgage. Power & Baird, of the local creditors paid, were also directors in the National Bank of Columbus, and with the latter there had been conferences with Walden at his house relative to Walden's need of money to continue his busi-

ness. In one of the conferences over the phone between George F. Walden and Lumpkin when Lumpkin desired the note to read on demand Walden demurred, saying that "he could not pay it right away," to which Lumpkin replied "that he was not expected to pay it right away, but pay as you can." This testimony is contradicted by Lumpkin. Lumpkin it appears was satisfied with the unsigned or unidentified statement of the corporation's assets in the business as represented by the statement of September 1, 1911, furnished him by Reich, the intermediary between Walden and Lumpkin. He made no investigation of the value of bankrupts' stock, of bankrupts' financial condition, or the indebtedness due for goods at the time of the transaction, January 15, 1912. Lumpkin in his testimony disclaimed any knowledge of the purpose of the Waldens to apply the money loaned to debts due the bank, Westbrook, or Power & Baird, and that he regarded the company as "solvent as any merchant on Broad street." That it was his opinion that giving a mortgage on the stock as the Walden Bros. Clothing Company had done would "kill their credit." He apparently left all details for the preparation of the minutes, showing the regularity and authority for the corporation's action, and of the execution of the note and mortgage to Bowden, the attorney suggested by Walden, all of which seems to have been delegated by Bowden to his stenographer, and Bowden, the attorney, who testified as to his connection with the transaction, says: "When I saw the book, it showed a regular meeting." The testimony of the parties connected with the transaction leaves the judicial mind in a state of anxiety, and a desire for facts not revealed by the record. The witnesses seem to have been cautious and guarded, divulging only what they were willing to disclose, which may, or may not have been, influenced by the financial condition of the Waldens, and a disposition to take care of local friends in the present crisis, and the bank which had the personal indorsement of the president and secretary of the corporation, which corporation was turning over its entire assets and business resources to secure the loan, which enabled it to pay these particular creditors.

As an outcome of the transaction, one fact is manifest—that, when the mortgage was delivered, the bankrupt had the same assets and the same amount of liabilities, but $9,250 of its liabilities were secured, and all of the bankrupts' assets were beyond the reach of its unsecured creditors, and the president and secretary of the corporation with the proceeds of the mortgage had absolved their personal liability on certain notes of the corporation. The testimony was both oral and documentary and quite voluminous, but what precedes we think is a fair but abbreviated statement of the evidence and reasonable inferences drawn therefrom. The referee who had the witnesses before him, including the documentary evidence, and heard every syllable of the testimony, with the aid of all the "side lights" so helpful in such an investigation, reported his finding that the company had consented to the bankruptcy proceedings which followed immediately the mortgage transaction, and that at the time of executing the mortgage and prior thereto the Walden Bros. Clothing Company was insolvent; that the

Waldens at the time in question knew that the corporation was insolvent; that the execution of the mortgage to claimant (Lumpkin) was done to hinder, delay, or defraud its creditors, and to prefer those creditors to whom the mortgage proceeds were paid; that these three precedent acts were in his judgment clearly established by a preponderance of the evidence.

The finding of the referee as to the status of the claimant, Lumpkin, in the transaction, we quote literally from the report:

"The evidence as a whole convinces me that the transaction from its inception to its completion was for the purpose, first, of paying said large debt to the said bank and thereby relieve said George F. Walden and C. L. Walden from individual liability on the same, and next to pay in full said Westbrook and Power & Baird, home creditors, and that the said bank directors had arranged beforehand with Mr. Lumpkin to furnish the money, and to have him protect himself by said mortgage and transfer, which being executed and delivered to secure a present consideration it was thought would pass muster in a court of bankruptcy. I therefore find that the evidence shows that said money was borrowed and said mortgage and transfer were made on the part of Walden Bros. Clothing Company, to defraud, hinder, or delay the creditors of said company, and that said company was insolvent, and that said F. G. Lumpkin knew or had reasonable grounds for knowing of said fraudulent intent on the part of said Walden Bros. Clothing Company. If he did not know it, he was ignorant by reason of his inexcusable ignorance and carelessness. I therefore find and hold that said mortgage and transfer are illegal, null, and void, and that the debt secured thereby should not be proven as a preferred claim."

The findings of the referee on many assignments of error challenging the correctness of his conclusions were reviewed, and after due consideration were affirmed by the District Judge, who recognized the rule that the findings of the referee upon questions of fact are presumptively correct, and should be sustained unless some obvious error of law or serious mistake of fact entered into the consideration of the case.

The learned District Judge, expressing his own opinion of the mortgage transaction in so far as it relates to the conduct of Walden Bros. Clothing Company, says:

"There is no doubt whatever from the evidence that he (referee) was fully justified in this finding; any fair view of the evidence as to the value of the stock of merchandise on hand, and the notes and accounts due the company contrasted with the admitted indebtedness, makes it clearly insolvent. At the time the mortgage was executed, was it made on the part of the bankrupt company with intent to hinder, delay, or defraud creditors? It must be conceded that there was a clear intent to delay the creditors, to say no more of it. Mortgaging its entire stock of merchandise and pledging its choses in action, and then using the money received from the mortgagee to pay three creditors, leaving a considerable number of its creditors wholly unprotected, could only have been with the knowledge that the latter class of creditors would be hindered and delayed, at least, in the collection of their debts. It must have intended that which it knew would occur. This is sufficient to bring the case within the statute (section 67e, Bank. Act 1898)."

So far there is no point to be made against the ruling of the court quoted above. We would not be disposed to disturb it in any event unless it was manifestly shown to be wrong. Since the finding of the judge on the facts has the same presumption in its favor that accompanies the judgment of the referee, we conclude that the views

expressed by the court are abundantly sustained by all the evidence in the case. We have seen, therefore, that the District Judge approved the findings of the referee in so far as the Walden Bros. Clothing Company is concerned that the transaction was in effect to hinder, delay, and defraud its creditors.

[3] The presumption of the correctness of the referee's finding is materially strengthened when the reviewing court concurs therein. In re Schulman, 177 Fed. 191, 101 C. C. A. 361; In re Noyes, 127 Fed. 286, 62 C. C. A. 218; Boswell v. Simmons, 190 Fed. 735, 111 C. C. A. 463; Buckingham v. Estes, 128 Fed. 584, 63 C. C. A. 20.

It is more particularly what follows in the opinion of the Judge that invites the earnest protest of appellant's counsel and calls for judicial scrutiny. The opinion proceeds:

"Really, the only question in the case is whether or not Mr. Lumpkin had reasonable grounds for suspicion that by the execution of this mortgage the bankrupt company intended to hinder, delay, or defraud its creditors. Were the facts and circumstances of the case and surrounding the transaction, such as to put him on notice that such was the purpose of the Walden Bros. Clothing Company? Section 3224 of the Code of Georgia 1910 provides: 'The following acts by debtors shall be fraudulent in law, against creditors and others and as to them, null and void, viz.: (1) Every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or for the benefit of, or in behalf of, creditors, where any trust or benefit is reserved to the assignor, or any person for him. (2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.'"

The District Judge after reciting the decision of the Supreme Court of Georgia (Nicol v. Crittenden, 55 Ga. 497), which holds in effect that under section 1952, Georgia Code, that to uphold a transfer from a fraudulent vendor, the purchaser should be without grounds of a reasonable suspicion, and whether there was in a given case reasonable ground, was a question for the jury, again refers to the attitude of claimant in the transaction and continues:

"I would be unwilling to sustain the action of the referee, if in so doing it was necessary to hold that Mr. Lumpkin was guilty of any actual fraud or intentional wrong, because I do not believe that is shown by the proof. But the referee correctly applied the law of Georgia, and had sufficient evidence to justify him in holding as he did, I do believe; and it is wholly unnecessary to hold that there was actual fraud or any intentional wrong on the part of Mr. Lumpkin in this case. All that is necessary to determine, and all that is determined, is that the facts are such as to justify the referee in finding them such as to put Mr. Lumpkin upon inquiry, and that such reasonable inquiry would have informed him of the intention of the bankrupt company, at least, to delay its creditors, and that in failing to make such inquiry he was guilty of such negligence as to make this conveyance void. In other words, the facts surrounding this transaction at the time Mr. Lumpkin took the mortgage gave grounds for reasonable suspicion of the bankrupt company's intent. He must have known that this company by conveying all its property of every kind to him to secure a note payable on demand put themselves out of business, so far as the mercantile world was concerned; and, having this knowledge, I think the referee was justified in

finding that he should have gone further and inquired as to what was the purpose of the company in making this large loan and incumbering all its property. Certainly no court would be justified in holding that there was clear and manifest error on the part of the referee in so doing."

The numerous assignments of error which challenge this ruling may be grouped and disposed of under the more definite and pertinent objection, that it is contrary to law and the evidence. And this brings us to consider the correctness of the judge's holding predicating his ruling on the view that the transaction as regards claimant was void entirely upon that section of the Georgia Code, supra, which provides that:

"A bona fide transaction on a valuable consideration, and without notice, or ground for reasonable suspicion shall be valid."

Obviously, the judge did adopt the view of the referee, "that said company was insolvent, and that said Lumpkin knew or had reasonable grounds for knowing of said fraudulent intent on the part of said Walden Bros. Clothing Company," and that, "if he did not know it, he was ignorant by reason of his inexcusable ignorance and carelessness." The judge could not sustain the referee, however, if it meant to impute fraud to appellant. The referee was first-hand with the witnesses, his opportunity for observing their manner of testifying, and the many visible but intangible tests of truth afforded him, renders his judgment the better criterion for determining the crucial fact, whether Lumpkin took this mortgage in good faith for a fair present consideration.

[4] In view of all the evidence disclosed by the record, we are reluctantly constrained to entertain a different conclusion from that reached by the district judge as to the good faith of Mr. Lumpkin in this transaction. Section 67e denounces as null and void all conveyances, transfers, assignments, or incumbrances made or given within four months prior to the filing of the petition with intent and purpose to hinder, delay, or defraud creditors, except as to purchasers in good faith for a present fair consideration. Both the referee and judge, we have seen, found that the purpose of the Walden Bros. Clothing Company was to hinder, delay, or defraud their creditors, in which we have concurred. There is no question that there was a fair consideration for the transfer. That the transaction so far as the purchaser is concerned must be impugned, if at all, by actual fraud, as distinguished from constructive fraud, is well settled by the leading case on the subject—Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008. Unless, therefore, the mortgagee knew of the purpose of the Waldens, or was in such atmosphere as would lead a reasonably prudent man to inquire, or that good conscience would impel him to investigate, he would be protected as a bona fide purchaser.

Without reviewing all the evidence, we think there were more than suspicious circumstances confronting the purchaser of this stock of merchandise and open accounts. The res ipsa of the transaction refutes the statement of the claimant, that he thought "they were as

good as any merchants on Broad street." Covering a stock of merchandise in a going concern with no other assets and taking simultaneously a transfer of every visible resource for "keeping it on its feet" cannot be regarded, to say the least, a healthy sign of prosperity. The claimant, a business man engaged in loaning money with every opportunity at hand for investigation of the financial situation of the borrower of such sum of money, who had been ill and out of touch with his business for two months, was content to act upon an unidentified statement of the assets and liabilities of the borrower made four months before. Again, whom do we find so solicitous for the welfare of the company; those interested in securing the payment of their debts. Reich it is true was not paid anything personally, but out of the loan which he was active in procuring the bank of which he was a director was paid unmatured debts equaling almost the amount of the loan. Was it not apparent to any business man, even to the proverbial wayfaring man, that inevitable disaster must follow? The statement showed in round numbers $10,000 indebtedness. Lumpkin evidently preferred not to know to whom it was owed.

It is unnecessary, if we were so inclined, to set out all the facts and circumstances which may have been considered by the referee. He had, as already noted, the advantage of the presence of the witnesses, and in reaching his conclusions was entitled as much to what may have been evaded as to that volunteered. Suffice it to say, that we cannot from the record impeach his conclusions on the question of Lumpkin's good faith in taking this mortgage.

We do not understand that Coder v. Arts, supra, undertakes to set up any hard and fast rule by which is to be tested the good faith of a purchaser under subdivision "e," § 67. In that case the court distinguishes between a preferential transfer and a fraudulent conveyance, and was dealing with the particular facts of a case which had been assailed as a preferential transfer under subdivision "b," § 60. The case of Coder v. Arts, supra, involved renewals of notes secured by mortgages on real estate covering long antecedent indebtedness, and it was claimed by the trustee at the time of giving the mortgage that Armstrong was insolvent, and that the mortgage was given with intent to prefer, and that claimant had reason to believe a preference was intended. The court decided this question adversely to the trustee upon the particular facts of that case, submitted to it by the finding of the Court of Appeals. The Supreme Court does hold that to avoid conveyances under section 60c it is essential to show actual fraud, but in that connection says also:

"We do not agree, if such is to be held the effect of the third conclusion of law in the finding of the Circuit Court of Appeals, that the giving of the mortgage and its effect upon other creditors could not be considered as an item of evidence in determining the question of fraud. What we hold is that, to constitute a conveyance voidable under 67e, actual fraud must be shown. * * * As we have already said, we must decide this case upon the facts found in the Circuit Court of Appeals, and it is therein found that in making the mortgage in question Armstrong had no intention to hinder, delay, or defraud his creditors."

It is sufficient to say that the decision turned on the particular facts of that case.

[5] Fraud is not to be presumed, but that does not imply that fraud may not be proved by circumstances as well as by direct evidence. Fraud may be actual arising from facts and circumstances of imposition. It may be apparent from the intrinsic nature and subject of the bargain itself. Hume v. U. S., 132 U. S. 406, 10 Sup. Ct. 134, 33 L. Ed. 393. The testimony of the witnesses considered by the referee in connection with all the circumstances, taken with Lumpkin's testimony, satisfied the referee that the claimant shut his eyes to the situation, and we cannot say that the referee is wrong in his contention that Lumpkin tacitly acquiesced in a subtle scheme between the bankrupt and the favored few of its creditors.

As was said by Mr. Justice Day in Wecker v. National Enameling Co., 204 U. S. 182, 27 Sup. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757:

"In cases where the direct issue of fraud is involved, knowledge may be imputed where one willfully closes his eyes to information within reach."

There seems to be no dearth of authority that a purchaser is not in good faith who makes no effort to determine whether one may make a transfer which will not be in violation of the act. Houck v. Christy, 152 Fed. 615, 81 C. C. A. 602; Dokken v. Page, 147 Fed. 439, 77 C. C. A. 674; Shauer v. Alterton, 155 U. S. 607, 14 Sup. Ct. 442, 38 L. Ed. 286; Harrell v. Beall, 17 Wall. 590, 21 L. Ed. 692. If Coder v. Arts by any stretch of construction is to be taken as requiring a different or greater degree of proof of fraud when the transfer is assailed because of bad faith, then this useful statute which was intended to secure impartial distribution of the estates of insolvents and to preserve the integrity of business intercourse might as well be stricken from the act. There can be no reason for any different rule of evidence to show bad faith than any other condition or fact. Artful subterfuges would in that event defeat the very purpose of the act. It would only be necessary for local creditors to find a speculative purchaser willing to "chloroform" himself in order that he might become a purchaser in good faith. We prefer, therefore, to rest our conclusion on the findings of the referee, that claimant was not a purchaser in good faith, and that the transfer is condemned by subdivision "e" of section 67 of the Bankruptcy Act.

There was no error in affirming the finding of the referee, and the decree appealed from should be affirmed, and it is so ordered.

PARDEE, Circuit Judge. I dissent on both the facts as found by the majority of the court and the law applicable to the facts as I read the record, and I reserve the right to file opinion as time may permit.