### In re TRIANGLE SHOE MFG. CO., Inc.

(District Court, E. D. New York. December 16, 1924.)

**1. Bankruptcy** ⬅⟶**212—Seller, seeking to reclaim for fraud, has burden of proof.**

Creditors, seeking to reclaim goods sold to bankrupt on the ground that they had been procured through its misrepresentations as to its financial condition, or under *circumstances* conclusively showing it had bought them without intending to pay for them, have the burden of proof by a fair preponderance of the evidence.

**2. Bankruptcy** ⬅⟶**212—Special commissioner's findings of fact on conflicting testimony not disturbed.**

The special commissioner's findings of fact on conflicting testimony, given by witnesses before him, that there were no misrepresenta-

tions by bankrupt, and no intention on its part, when it bought goods, not to pay for them, will not be disturbed, unless there is some obvious error of law, or the evidence cannot in any reasonable view be said to justify his findings.

In Bankruptcy. In the matter of the Triangle Shoe Manufacturing Company, Inc., bankrupt. On motion to confirm special commissioner's report. Report confirmed.

The report of the special commissioner is as follows:

"The issues raised by the petitions of M. J. Frank & Co., Inc., Esmay Products Corporation, J. Brand & Son, and Prosper Shevenell & Son, Inc., and the answers interposed thereto by Robert C. Lee, trustee herein, were heretofore referred to me as special commissioner for examination, the taking of testimony, and the making of a report thereon. * *ˑ *

"These are reclamation proceedings instituted by creditors for the recovery of merchandise alleged to have been delivered to the bankrupt a few weeks prior to the bankruptcy, by reason of fraudulent representations of facts of a material character as to the financial status of the bankrupt, made by the latter's president. The bankrupt was a manufacturer of shoes. It did a large business; its sales from January, 1923, to September of that year, exceeding the sum of $320,000. Its employees numbered 125. It employed a high-salaried credit man, who generally looked after and administered its financial affairs. The president, Mr. Lieberwitz, was the active business man of the corporation. He looked after the sales, and purchased the greater portion of the supplies and merchandise required in the business. From time to time the bankrupt was accustomed to render financial statements, showing the state of its business and in a general way its financial condition. These statements were prepared by the credit man at the direction of the president, but it appears were never critically examined by the latter. The bankrupt was listed with R. G. Dun & Co., a mercantile reporting and credit agency. There is no evidence that prior to the bankruptcy proceedings the bankrupt was in default of its financial obligations, or that any legal proceedings were pending against it.

"I shall first consider the claim of M. J. Frank & Co., Inc. On June 26, 1923, M. J. Frank & Co., Inc., and the bankrupt entered into a contract for the purchase of certain cloth of the value of several thousand dol-

lars, to be paid for partly in cash and partly by 60-day trade acceptances at 6 per cent. The contract provided that a default by the buyer in any payment might be treated by the seller as a breach of the entire contract, and that then the seller should be excused from making further deliveries. M. J. Frank & Co., Inc., made partial delivery under the contract, and it claims that on August 28, 1923, the bankrupt was in default in cash payments then due thereunder to the extent of from $700 to $1,200. The bankrupt claims, however, that its default in this respect was merely technical, and was caused, not by inability to pay, but by reason of its desire to effect a modification of the contract of June 26, 1923, and to this end was awaiting the return of Mr. Frank from Europe, and that the representatives of M. J. Frank & Co., Inc., had knowledge of these facts. With respect to this phase of the controversy, the evidence does not justify a finding that on August 28, 1923, either party was so in default as to justify a rescission of the contract.

"On August 28, 1923, at an interview between Mr. Frank and Mr. Lieberwitz, the bankrupt's president, the contract of sale of June 26th was modified substantially. The modification involved the redelivery to M. J. Frank & Co., Inc., of certain cloth delivered to the bankrupt under the contract of June 26th, and the substitution by M. J. Frank & Co., Inc., therefor of cloth of a different grade and character, and all future deliveries were to consist of the substituted cloth. New trade acceptances, as of the date called for by the original contract, were given and accepted. M. J. Frank & Co., Inc., delivered the substituted cloth pursuant to the modified agreement, and there is evidence that it discounted the trade acceptances given by the bankrupt. This modification of the original contract imposed new rights and obligations upon the parties, who thereby surrendered their then existing legal rights, and the agreement, as modified, was substantially performed. I shall therefore treat the modified agreement as a new contract.

"M. J. Frank & Co., Inc., claim that at the interview of August 28th Mr. Lieberwitz made a material false representation, upon which it relied and which entitled it to reclaim the merchandise delivered under the modified contract, irrespective of the solvency or insolvency of the bankrupt. There is evidence that at this interview Mr. Frank refused to modify the original contract, be-

7 F.(2d)—45

cause the bankrupt was then in default in certain payments due thereunder, but finally agreed to consider the proposed modification if Mr. Lieberwitz would agree to make a cash payment of about $5,000; that Mr. Lieberwitz then frankly stated, 'I can't make a cash payment, but there is no reason why you should refuse to do business with me; I am solvent, and I am worth some $70,000 to $80,000, net worth, my business;' that, upon Frank's saying that he would have to have proof of these assertations, Lieberwitz took a folder or paper from his pocket and read off certain figures, which Frank wrote down, and then said, 'This is my statement; this is how we stand financially;' that Frank gave this data to a Miss Edelstein, the credit woman of the company, who typed it and returned it to Frank, but it satisfactorily appears that Lieberwitz was never requested to sign the statement so prepared; that Lieberwitz also gave certain names as references, and in particular specifically mentioned and referred to a certain financial statement of the bankrupt of date July 31st, which had been sent to various concerns, including the Armour Leather Company, a corporation of high standing, and promised to send Frank one of these statements; and Lieberwitz showed Frank a letter from Armour Leather Company, which indicated that the latter company was extending credit to the bankrupt up to and about $8,000 or $10,000; also that Lieberwitz said, 'We have made a lot of money and we are very busy now.'

"To some extent this evidence is corroborated by an employee of the claimant, who testified that he was in the room at the time and heard Lieberwitz say, 'I can't make a cash payment, but I am perfectly all right financially,' and that he read off some figures from a paper. On behalf of the trustee, Lieberwitz testified at length. He denied in positive terms that at the interview of August 28th he stated that the business was worth from $70,000 to $80,000 over liabilities, or that he referred to a financial statement made to Armour Leather Company, or that he read off to Mr. Frank items from any statement, or from any loose-leaf folder, as to the financial condition of the bankrupt, or that at any time he made to Frank any statement or representation as to the business. Miss Edelstein, the credit woman of M. J. Frank & Co., Inc., testified that, after the interview of August 28th and after Lieberwitz had left, she called Armour Leather Company on the phone, and spoke to a Mr. Mabie, the credit man, told him she had a

statement of the bankrupt, and asked him if he also had a statement, and that he replied that he had a statement which showed that the assets exceed the liabilities by about $77,000; that when he told her this she 'made a mental note that he was evidently reading' that from some statement—from the same statement I had before me.' But Mr. Mabie testified that, while he may have had a conversation over the phone with Miss Edelstein, of which he had no recollection, he was positive that he never read to her any statement; that it was his custom never to do so.

"Much testimony also was given by an accountant, tending to show that various material items relating to the business of the bankrupt, and contained in the statement of July 31st, which is claimed to have been referred to at the interview of August 28th, were inaccurate and false in material respects, and particularly that some $60,000 of accounts receivable, appearing on the said statement of July 31st, in fact had been assigned, and were then held by a credit company for advancements made thereon, and that this was not made to appear on the statement. While this may be true, it also appeared that the sum so advanced by the credit company in fact was carried as a liability, and included in the item of accounts payable on the said statement. Other testimony was given by the accountant in an attempt to show the actual condition of the bankrupt on August 28th. Plainly, the purpose of the evidence to which I have referred was to show that a condition of insolvency or near insolvency, existing in July 31st, continued to August 28th; that this condition of practical insolvency was concealed through the medium of false items on the statement of July 31st, orally repeated in substance by Lieberwitz in the interview of August 28th; that by specific reference to this statement the bankrupt became responsible for the false statements therein contained, in addition to the false statements then orally made; and that in reliance on these false representations claimant entered into the modified contract of August 28th, and so is entitled to succeed in this proceeding.

"I deem it unnecessary to make further specific reference to the other evidence. I have read and considered carefully all the testimony. As a result I have concluded that the claimant has failed to prove, by a preponderance of credible evidence, either that Lieberwitz so made reference to the statement of July 31st as to be bound by any false items therein contained, or that he orally or otherwise stated or read off from any paper the items thereof, or that he made any false representation whatever to Mr. Frank at the interview of August 28th. The testimony of Mr. Frank is at complete variance with that of Mr. Lieberwitz. The corroborative evidence in favor of Frank's testimony is not of the convincing force necessary to overcome the positive denials of Lieberwitz. Mr. Brown is the brother-in-law of Mr. Frank and the latter's employee. Moreover, he did not testify to any specific false representation of fact. Frank and Brown were interested witnesses to a greater extent than was Lieberwitz.

"But, if I am mistaken in this conclusion, if it be assumed that Lieberwitz is chargeable with any false statements contained in the statement of July 31st, even then I am clearly convinced that, in making and performing the modified contract of August 28th, Frank did not rely upon said statement, or upon any misrepresentation of fact orally made by Lieberwitz at said interview of August 28th. The evidence disclosed that at this interview Lieberwitz without equivocation admitted his inability to make a cash payment; that Frank then evinced plainly a distrust of the former's alleged statement that he was worth from $70,000 to $80,000, saying, 'You would have to prove that to me.' . This distrust is inconsistent with the present contention that Frank, after thus giving expression of his disbelief in Lieberwitz, immediately proceeded to give full credence to the alleged specific representations of fact then claimed to have been made by the latter. It is also significant that Lieberwitz was never requested to sign the alleged statement of facts claimed to have been made to Frank and typewritten by Miss Edelstein.

"It appears that reports were received from R. G. Dun & Co., and that inquiries were made of other persons and concerns who had dealings with the bankrupt, and Miss Edelstein, after her telephone conversation with the credit man of Armour Leather Company, told Frank that, 'in view of the fact that Armour Leather Company was checking him for between $8,000 and $10,000, we would be willing to take a chance on checking him also.' The letter of Armour Leather Company contained a general recommendation that he (Lieberwitz) could have purchases up to about $10,000. In reference to this letter Frank testified that 'what appealed to me was that a high-class house, selling a high-class product, should give such a letter.' In my opinion, the inducing cause of the new contract of August

28th was reliance upon the favorable aspect of the letter of Armour Leather Company, upon reports from R. G. Dun & Co., upon such replies from other business concerns of whom inquiries had been made, and upon information received from other sources, and not reliance upon or credence given to any false representations of fact made by Lieberwitz on August 28th. A false representation alone is not sufficient. It must be acted on. A false representation, not relied upon, is not actionable.

"In arriving at this conclusion I am not unmindful of the fact that reliance upon material false representation is not inconsistent with the right to obtain information from other sources also, and I have not overlooked the rule that a material false representation, which is relied upon and which is the inducing cause of a contract, justifies a rescission, regardless of an intent to pay, and regardless of insolvency. My view of the evidence, as above stated, also disposes of claimant's contention that Lieberwitz concealed or failed to disclose the insolvency or near insolvency of the bankrupt, with the intent not to pay. The bankrupt was a going concern, doing a large business. No legal proceedings had been instituted against it, and it is not made to appear satisfactorily that at the time the bankrupt was unable to or had failed to meet, generally, its obligations as they became due. No evidence adduced justifies the conclusion, either that actual insolvency, within the legal acceptation of the term, existed on August 28th, or that the bankrupt acquired the merchandise in question by means of false representations as to its financial condition, or by concealment of a condition of insolvency with intent not to pay. Both elements are necessary. Morris v. Talcott, 96 N. Y. 100, page 107, 108; Hotchkin v. Bank, 127 N. Y. 329, 27 N. E. 1050; In re Myley Elec. Co. (D. C.) 291 F. 775; In re Sol Aarons & Co., 193 F. 646, 113 C. C. A. 514; In re Levi & Picard (D. C.) 155 F. 262; In re B. & R. Glove Corporation (C. C. A.) 279 F. 372.

"Reclamation proceedings are not favored, 'except when accompanied with strict proof.' In re Isaac Berg (D. C.) 25 Am. Bankr. Rep. 170, 183 F. 885; In re Murphy-Barbee Co. (D. C.) 11 Am. Bankr. Rep. 428; In re Philip Garfinkel et al. (C. C. A.) 3 Am. Bankr. Rep. (N. S.) 400, 286 F. 374; In re Empire Grocery Co. (D. C.) 277 F. 73. I find that the officers of the bankrupt company had no intention to withhold payment for any of the goods purchased, and that

it did not purchase them without reasonable hope or expectation of paying for same. I further find that the reclaiming creditor has not established a false representation, known to be such, made by the bankrupt, and calculated and intended to influence the seller, and which came to its knowledge, and in reliance upon which the seller in good faith parted with its property.

"Accordingly I respectfully recommend to this honorable court that the petition of M. J. Frank & Co., Inc., be denied.

### "Esmay Products Corporation.

"Esmay Products Corporation seeks to reclaim certain merchandise valued at about $1,700. The testimony taken in connection with the reclamation proceedings instituted by M. J. Frank & Co., Inc., so far as it relates to the financial condition of the bankrupt in or about August, 1923, was offered in evidence herein. The principles of law here involved have been passed upon by me in the matter of the reclamation proceedings instituted by M. J. Frank & Co., Inc. My report in that matter, to which the court is respectfully referred, enunciates a full statement of the principles involved and the reasoning followed and adopted by me in the instant case.

"I find that the officers of the bankrupt company had no intention to withhold payment for any of the goods purchased, and that it did not purchase them without reasonable hope or expectation of paying for same. I further find that the reclaiming creditor has not established a false representation known to be such, made by the bankrupt, and calculated and intended to influence the seller, and which came to its knowledge, and in reliance upon which the seller in good faith parted with its property.

"Accordingly I respectfully recommend to this honorable court that the petition of Esmay Products Corporation to reclaim certain merchandise sold to the bankrupt be denied.

### "J. Brand & Son.

"J. Brand & Son seek to reclaim certain merchandise valued at about $2,400. The testimony taken in connection with the reclamation proceedings instituted by M. J. Frank & Co., Inc., so far as it is pertinent and relevant to the financial condition of the bankrupt, was offered in evidence herein. The principles of law here involved have been passed upon by me in the matter of the reclamation proceedings instituted by M. J. Frank & Co., Inc. My report in this mat-

·ter, to which the court is respectfully referred, enunciates a full statement of the principles involved and the reasoning followed and adopted by me in the instant case.

"I find that the officers of the bankrupt company had no intention to withhold payment for any of the goods purchased, and that it did not purchase them without reasonable hope or expectation of paying for same. I further find that the reclaiming creditor has not established a false representation, known to be such, made by the bankrupt, and calculated and intended to influence the seller, and which came to its knowledge, and in reliance upon which the seller in good faith parted with its property.

"Accordingly I respectfully recommend to this honorable court that the petition of J. Brand & Son to reclaim certain merchandise sold the bankrupt be denied.

"Prosper Shevenell & Son, Inc.

"Prosper Shevenell & Son, Inc., seek to reclaim certain merchandise, valued at about $800, delivered to the bankrupt on or about September 12 or 13. The record discloses that this merchandise was ordered by the bankrupt on or about September 1, 1923. I am convinced that the merchandise in question and sought to be reclaimed herein was purchased in the usual course of business by the bankrupt, and that no false or material representation was made by the bankrupt in the purchase of same.

"I find that the officers of the bankrupt company had no intention to withhold payment for any of the goods purchased, and that it did not purchase them without reasonable hope or expectation of paying for same. I further find that the reclaiming creditor has not established a false representation, known to be such, made by the bankrupt, and calculated and intended to influence the seller, and which came to its knowledge, and in reliance upon which the seller in good faith parted with its property.

"Accordingly I respectfully recommend to this honorable court that the petition of Prosper Shevenell & Son, Inc., to reclaim certain merchandise sold to the bankrupt, be denied."

Lesser Bros., of New York City (William Lesser, of New York City, of counsel), for receiver and trustee.

Gilbert & Gilbert, of New York City (Francis Gilbert, of New York City, of counsel), for M. J. Frank & Co., Inc.

Marks & Marks, of New York City (Isaac Marks, of New York City, of counsel), for Esmay Products Corporation and J. Brand & Son.

Bernard F. Nathan, of New York City, for Prosper Shevenell & Son, Inc.

INCH, District Judge. This is a motion for an order confirming a special commissioner's report. It is in effect an appeal to this court to review the findings of fact and conclusions of law of said special commissioner.

On September 17, 1923, an involuntary petition in bankruptcy was filed against the above-named bankrupt. Some little time prior to this, four creditors had sold and delivered to the bankrupt certain merchandise, and, when the bankruptcy became a fact, sought to become legally preferred to the other creditors by means of reclamation proceedings, for that in substance is what the result of such proceedings amounts to. The issues raised by the answers of the trustee in bankruptcy to the petitions of these creditors were duly referred to a special commissioner.

The main contest was between the creditor M. J. Frank & Co., and the trustee. The other three creditors apparently were content to rest on a decision in the Frank Case, although certain testimony was also taken in their cases. The Frank Case commenced before the special commissioner on or about November 19, 1923, and continued, with certain adjournments, to January 24, 1924, during which time approximately 381 pages of testimony were taken down, and this record is submitted, together with all the other papers, to me on this motion.

Judging from the brief submitted to the special commissioner in behalf of Frank & Co., by its counsel, that reclaiming creditor contended that it was entitled to the return of its property, provided it had established either of two propositions: (a) That the goods sought to be reclaimed had been procured through misrepresentations of the bankrupt as to its financial condition or by any other fraud; (b) that the goods had been procured under circumstances which conclusively showed that the bankrupt bought them without intending to pay for them. Although differing in amount of merchandise and dates of delivery, etc., the above were the two propositions also relied on by the other three creditors as necessary to be proved before the special commissioner.

[1] The burden of proving, by a fair preponderance of evidence, either or both of the above propositions, rested on the respective creditors, and, as I have above stated, a great

deal of testimony was taken, from my examination of which a sharp conflict as to material facts appears. The special commissioner apparently gave most careful and earnest consideration to all this testimony, for not only did he withhold rendering his decision until October, 1924, indicating a most careful review by him of the written testimony, but he had the witnesses before him and could observe their demeanor, their credibility, and the weight to be given their testimony far better than this court can from printed pages.

It is also apparent that whether or not a fraud was committed, either by giving a statement (admittedly an oral one in the first instance), or there existed an intention not to pay, were, under the circumstances of this case, almost entirely questions of fact. The report of the special commissioner, after reviewing in a general way the testimony, distinctly finds that the Frank creditor has failed to prove, by a preponderance of credible evidence, that the bankrupt "made any false representation whatever to Mr. Frank at the interview of August 28," and furthermore contains a finding that this creditor "did not rely upon the statement of July 31, or upon any misrepresentation of a fact, orally made, by bankrupt, at said interview of August 28."

Possibly, if the attention of the special commissioner had been called to the criticism now urged before me, his report might have been worded somewhat differently; but it appears to me plain that, not only did the special commissioner find as a conclusion of law, as I read his report, that this creditor failed to sustain the burden of proof, but that, as a conclusion of fact, there were no false representations made on August 28, and that the creditor did not rely upon a statement of July 31, or upon any representation of bankrupt. Also the special commissioner specifically finds from the testimony "that the officers of the bankrupt had no intention of withholding payment for any of the goods purchased, and that it did not purchase them without reasonable hope or expectation for paying same."

Accordingly, on the two points urged before the special commissioner by the Frank creditor and the others, it would seem that the special commissioner found against such contentions on the facts, and this court should be and is reluctant to substitute its own opinion on facts, where a conflict plainly existed, and the special commissioner has had the advantage of weighing the testimony in the light of the actual presence of the witnesses, unless there is present some obvious error of law, or the evidence cannot, in any reasonable view, be said to justify his findings. Lumpkin v. Foley, 204 F. 372, 122 C. C. A. 542; Brookheim v. Greenbaum, 225 F. 763, 141 C. C. A. 89.

[2] If, as found by the special commissioner as a matter of fact, there were no misrepresentations made, and there was no intention not to pay for the goods when purchased, there would seem, in spite of the argument now made before me, to be nothing left to justify what is practically a rescission of a sale and a return to the vendor of merchandise sold to a party subsequently becoming an involuntary bankrupt.

I also carefully considered the report of the special commissioner as to the other creditors' claims, and for the reason assigned in the Frank case, to wit, an apparently earnest and fair consideration by the special commissioner of conflicting testimony of witnesses before him, and a finding on those facts against the contention of said creditors, I have no desire to disturb such findings and the conclusions necessarily based on them.

Therefore, for the reason above mentioned, and after careful consideration of the able briefs submitted to me, as well as those submitted to the special commissioner, together with a reading of the testimony submitted, which as I have said plainly shows a conflict of facts, I feel that the report should be in all respects confirmed.

As to the contention of the trustee that these creditors should be compelled to pay storage charges for the time these proceedings took, I do not think that this burden should be imposed on them, as practically nine months of this time was consumed by the special commissioner in considering the case and in rendering his report.

Report confirmed.